REDACTED -- Public Version filed June 1, 2005

# EXHIBIT E

# Unpublished Cases

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1

2003 WL 1966438 (D.Del.)

(Cite as: 2003 WL 1966438 (D.Del.))

c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
3COM CORPORATION, Plaintiff,
v.
D-LINK SYSTEMS, INC., Defendant.
No. C.A. 03-014 GMS.

April 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On January 7, 2003, the plaintiff, 3Com Corporation ("3Com") filed the instant action alleging infringement of three patents relating to network interface adapters. The defendant, D-Link Systems, Inc. ("D-Link"), moves to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (D.I.11). For the following reasons, the court will grant the defendant's motion.

II. DISCUSSION

D-Link moves to transfer this action to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need for transfer, and 'the plaintiff's choice of venue [will]

not be lightly disturbed.' *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.'. *Id..* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. [FN1] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN1. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that D-Link has met its burden of demonstrating that transfer is appropriate. First, it is clear that this case could have been brought in the Northern District of California. Any federal district court possesses subject matter jurisdiction over federal patent law claims such as those at issue in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 2

2003 WL 1966438 (D.Del.)

**(Cite as: 2003 WL 1966438 (D.Del.))**

present action. 28 U.S.C. §§ 1331 and 1338. Further, venue is proper in the Northern District of California because the defendant is a California corporation with its sole place of business in that state. 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides....").

Having determined that the case could be properly heard in the Northern District of California, the court now considers whether it would more conveniently proceed in that forum and whether the interest of justice supports a transfer to that district. Again, the court finds that these criteria are met. First, the court notes that although 3Com is a Delaware corporation, its principal place of business is in Santa Clara, California. D-Link is a California corporation with its sole place of business in Irvine, California. Although some of D-Link's products, including the accused products, are sold in Delaware, the connection to this forum ends there. Neither 3Com nor D-link maintains or owns any facility, property, or personnel in Delaware. Instead, the headquarters of both parties are located in California. Neither party has any books, records, or other documents in this district. Apparently, none of the acts related to the development of the accused products occurred in this district, while many, if not all, of these acts occurred in California. Clearly, litigating this case there would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents. In addition, D-Link was forced to retain local counsel for purposes of litigating in this district. Were the case transferred to California, this additional expense would not be required.

**\*2** In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California. These witnesses include individuals involved in the development of the accused products, such as employees of the manufacturers of the products, Realtek Semiconductor Corp. ("Realtek") and Via Technologies, Inc. ("Via"). Realtek and Via are

Taiwanese companies with offices and/or agents in northern California. Futhermore, at least one of the inventors of the accused products and one of the prosecuting attorneys could not be compelled to testify in this court. By contrast, each appears to live in northern California, and would be subject to compulsory process there. Finally, at least two witnesses with knowledge of allegedly invalidating prior art are subject to compulsory process in northern California, but not Delaware. Even if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment. Convenience, cost, and expediency, then, favor a transfer.

The remaining factors of court congestion, the enforceability of the judgment, and the public polices of the fora neither favor nor counsel against transfer. These factors remain neutral in the court's analysis.

III. CONCLUSION

In short, Delaware seems to have little interest in the present dispute between these parties, while justice, convenience, cost, and expediency favor a forum in California. The court recognizes that the Northern District of California is not the plaintiff's choice of forum for the present action; however, it is an exceedingly more convenient and appropriate forum than Delaware. In other words, the movant has shown that 'the litigation would more conveniently proceed and the interest of justice be better served by transfer' to California. *Jumara*, 55 F.3d at 879 (citations omitted). As such, transfer is appropriate.

For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendant's Motion to Transfer the case to the United States District Court for the Northern District of California (D.I.11) is GRANTED.

2003 WL 1966438 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 1966438 (D.Del.)

**(Cite as: 2003 WL 1966438 (D.Del.))**

Page 3

• 1:03CV00014  (Docket)

(Jan. 07, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**REDACTED -- Public Version filed June 1, 2005**

Westlaw.

Not Reported in F.Supp.2d

1999 WL 615175 (D.Del.)

(Cite as: 1999 WL 615175 (D.Del.))

Page 1

c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
**AMERICAN BIO MEDICA** CORPORATION,
Plaintiff,
v.
PENINSULA DRUG ANALYSIS CO., INC.;
James T. Ramsey; Phamatech, Inc .; Dipro
Diagnostic Products, Inc.; Dipro Diagnostic
Products of North America, Inc.,
Defendants.
**No. Civ.A. 99-218-SLR.**

Aug. 3, 1999.
Daniel F. Wolcott, Jr., Gregory A. Inskip, and
Joanne Ceballos, of Potter, Anderson & Corroon
LLP, Wilmington, Delaware, and Charles Michael
Tobin, of Hopkins & Sutter, Washington, D.C., for
plaintiff.

Matthew B. Lehr, and Maryellen Noreika, of
Morris, Nichols, Arsht & Tunnell, Wilmington,
Delaware, and Edward W. Moore, of Dallas, Texas,
for defendants Peninsula Drug Analysis Co., Inc.;
James T. Ramsey; DiPro Diagnostic Products, Inc.;
and DiPro Diagnostic Products of North America,
Inc., Doreen L. Costa, Neil P. Sirota, and Steven R.
Gustavson, of Baker & Botts, L.L.P., New York,
New York, of counsel.

Kevin W. Goldstein, of Ratner & Prestia,
Wilmington, Delaware, for defendant Phamatech,
Inc., Steele N. Gillaspey, of Gillaspey, Harms &
Associates, San Diego, California, of counsel.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

*1 Pending before the court are motions to dismiss
or transfer venue filed by defendants Dipro
Diagnostic Products of North America, Inc.
("Dipro"), Phamatech, Inc. ("Phamatech"), and
Peninsula Drug Analysis Co., Inc. and James T.
Ramsey ("Peninsula" and "Ramsey," respectively).
(D.I. 17, 25 and 49) Plaintiff American Bio Medica
Corporation ("ABMC") opposes said motions.
ABMC owns the rights to U.S. Design Patent No.
D404812, which patent issued on January 26, 1999.
ABMC is a New York corporation engaged in the
manufacture, worldwide distribution and sale of the
Rapid Drug Screen, a product covered by the patent
at issue. According to ABMC, when the Rapid Drug
Screen was developed in 1995, it was the first
vertical, hands free test for the detection of the
presence of drug residue in urine. Until February
1999, ABMC purchased test strips from defendant
Phamatech for incorporation into the Rapid Drug
Screen. ABMC alleges that Phamatech initiated
production of its own vertical test kit (Quick
Screen) in 1998 or earlier, using proprietary
information it acquired by reason of its supply
relationship with ABMC.

Defendant Phamatech is a California corporation.
According to ABMC, Phamatech distributes Quick
Screen through the auspices of defendants Peninsula
and Ramsey, among others. Defendant Dipro is a
Delaware corporation that, according to ABMC,
acquires directly or indirectly from Phamatech an
accused product called Rapid Response and
distributes that product through Peninsula and
Ramsey, among others. Peninsula is a Virginia
corporation and Ramsey is the sole stockholder and
an employee of Peninsula.

Plaintiff ABMC initiated this lawsuit on April 7,
1999 against defendants for design patent
infringement, violation of the Lanham Act, and
other acts of unfair competition. A day later, on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

1999 WL 615175 (D.Del.)

(Cite as: 1999 WL 615175 (D.Del.))

April 8, 1999, Phamatech filed suit in the United States District Court for the Southern District of California seeking a declaratory judgment that ABMC's design patent is invalid, and joining other federal and state claims essentially mirroring the claims and operative facts at issue. By decision issued June 21, 1999, Judge Keep of the Southern District of California found that the California court could exercise specific personal jurisdiction over ABMC; however, applying the "first-filed" rule, she stayed the California case pending disposition of the instant motions.

II. FACTS

The facts are essentially undisputed. Prior to the filing of the complaint, none of the accused products had been sold to a Delaware resident. In the fall of 1998, defendant Peninsula did ship an order of ABMC's Rapid Drug Screen to a Delaware resident, Pace Electric of New Castle, Delaware. Sometime thereafter and prior to January 1999, Peninsula stopped handling ABMC's product. In January 1999, defendant Ramsey and a third party met with a representative of Pace to discuss a possible business relationship for the sale and distribution of the Phamatech/Dipro product, Rapid Response, in Delaware. These discussions took place in Hawaii and Maryland. Although there are averments of record indicating that some agreement was reached (D.I.32), it is the court's understanding that no actual sales or movement of defendants' products occurred in Delaware prior to the filing of the complaint.

*2 Prior to April 1999, Peninsula sent direct mail postcards to Delaware as part of a mass mailing to potential customers in more than 20 states. [FN1] Both Ramsey and Phamatech maintain national Internet websites that can be accessed from Delaware. It is the court's understanding that these websites include promotional material about the allegedly infringing products, including information on ordering and shipping; however, orders cannot be consummated directly through the websites.

> FN1. Approximately 60 out of a total of 6,000 postcards were directed to Delaware

residents. No responses are recorded.

III. DISCUSSION

A. Personal Jurisdiction

ABMC, as plaintiff, bears the burden of establishing that this court may exercise personal jurisdiction over defendants. When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a *prima facie* case with the record viewed in the light most favorable to the plaintiff. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1462 (D.Del.1991); *Computer People, Inc. v. Best Int'l Group, Inc.*, No. Civ. A. 16648, 1999 WL 288119, at *4 & n. 5 (Del. Ch. Apr 27, 1999). There is no question but that this court can exercise personal jurisdiction over defendant Dipro, a Delaware corporation. The focus of the following discussion, therefore, is whether the exercise of personal jurisdiction over the remaining defendants comports with the law of the Federal Circuit. [FN2]

> FN2. According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir.1995).

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for "lack of jurisdiction over the person." According to the United States Supreme Court,

  before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). The principle pronounced above is traditionally described in this court as a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

1999 WL 615175 (D.Del.)

(Cite as: 1999 WL 615175 (D.Del.))

two-step analysis. The court will determine, first, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendants' rights to due process.

Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed "broadly ... to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). As noted by this court in *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998), "[t]he Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis." *Accord Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.,* 611 A.2d 476, 480-81 (Del.1992); *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods. Inc.,* Civ. A. No. 12036, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991); *Ramada Inns v. Drinkhall,* No. Civ. A. 83C-AU-56, 1984 WL 247023, at *2 (Del.Super. May 17, 1984). Therefore, the court must determine that the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendants' constitutional rights to due process. [FN3]

> FN3. The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we ... defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed.Cir.1998). Thus, in *Luker,* the Federal Circuit's analysis followed that of the Sixth Circuit's holding in *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967 (6th Cir.1987): " 'This Ohio [long-arm] statute has been construed to extend to the outer

limits of due process, and thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations." ' *Luker,* 45 F.3d at 1544 (quoting *Dribeck,* 811 F.2d at 969). By contrast, as noted above, the Delaware state courts do not collapse the long-arm inquiry into the due process inquiry and neither shall this court.

*3 Delaware's long-arm statute provides:
> (c) As to a cause of action brought by a person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or his personal representative, who in person or through an agent:
> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in-this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State....

Del.Code Ann. tit. 10, § 3104(c)(1)-(4).

As explained by the Delaware Supreme Court in *LaNuova,*
> [t]he conduct embraced in subsections (1) and (2), the transaction of business or performance of work and contracting to supply services or things in the State, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct. Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction.

\* \* \*

Similarly, where the claim is one for tortious injury under subsection (c)(3),
a single "act or omission" in the State in which the injury was caused will suffice. Such a claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

1999 WL 615175 (D.Del.)

**(Cite as: 1999 WL 615175 (D.Del.))**

Page 4

may also be viewed as transactional. *LaNuova,* 513 A.2d at 768. Therefore, in order to establish transactional or specific jurisdiction, plaintiff must demonstrate not only that an act or acts occurred in Delaware but also that its causes of action arise from those act or acts. According to relevant caselaw, plaintiff also must demonstrate that the act or acts occurring in Delaware actually constitute "transacting business" in Delaware, i.e., that defendants "purposefully avail[ed themselves] of the privileges and benefits of Delaware law." *Computer People, Inc.,* 1999 WL 288119, at *8; *see also Thorn EMI N. Am. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993) (stating that the designated conduct "must be directed at residents of the State of Delaware and the protection of its laws"). With this requirement in mind, courts have concluded that "[m]ere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware." *Id.* (citing *Moore v. Little Giant Indus., Inc.,* 513 F.Supp. 1043, 1047 (D.Del.1981); *Waters v. Deutz Corp.,* 460 A.2d 1332, 1335 (Del.Super.1983). The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is "part of a general business plan ... to solicit business in Delaware and deliver products to customers in Delaware." *Thorn EMI,* 821 F.Supp. at 274.

*4 Plaintiff alleges in its complaint seven causes of action, including unlawful use of the trademarks and service marks of the Rapid Drug Screen in violation of the Lanham Act and common and state law trademark rights; violation of the design patent "by making, using and/or selling the ABMC design ..."; and engaging in unfair competition and deceptive trade practices. (D.I.1) Although the products at issue have not been made, used, or sold in Delaware, plaintiff asserts that, "[t]hrough offers and extensive planning to sell the infringing product in Delaware, defendants have engaged in a course of conduct that readily meets the nexus requirements of sections 3104(c)(1), (2), and (3)." (D.I. 57 at 7-8)

The record demonstrates that defendants Peninsula and Ramsey have offered to sell [FN4] allegedly

infringing products to Delaware residents through what appears to be a concerted marketing effort. The marketing effort includes national advertisements accessible to Delaware residents (the internet website), out-of-state sales negotiations with a Delaware resident, [FN5] and the mailing of promotional materials to Delaware residents. Given the history of these defendants' relationship with plaintiff, the record adequately demonstrates that these activities are directed at Delaware residents, constitute "transacting business," and are sufficiently related to plaintiff's causes of action to satisfy the requirements of 10 Del. C. § 3104(c)(1). [FN6] *Cf. Computer People, Inc.,* 1999 WL 288119, at *8. [FN7]

> FN4. Plaintiff did not specifically allege such in its complaint; however, 35 U.S.C. § 271(a) reads "whoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent." (Emphasis added)

> FN5. The out-of-state sales negotiations with Pace Electric are viewed in tandem with defendants' other conduct as evidence of a general business plan directed at Delaware residents and the protection of its laws.

> FN6. As noted, the court is satisfied that the activities described above are "part of a general business plan" and not isolated, unrelated events. In the past, this court has demanded as well proof that the activities have had a "tangible effect" in Delaware. *See,* e.g., *Intel Corp.,* 20 F.Supp. at 696 ("... SST's solicitations in Delaware [have not] been shown to have had any tangible effect on Intel's sales here."). Sales are lost generally because of the sale of competing products. Given the fact that liability under 35 U.S.C. § 271(a) can now rest on mere "offers to sell," the court is reluctant to require proof of actual sales and is not sure what other "tangible effect" is contemplated. Therefore, the court will not require evidence of "tangible effects" in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

1999 WL 615175 (D.Del.)

**(Cite as: 1999 WL 615175 (D.Del.))**

this case.

> FN7. Although the court noted that, "as a general matter telephone calls and an e-mail [to a Delaware resident] do not, in and of themselves, automatically constitute 'transacting business' within Delaware sufficient to invoke jurisdiction under § 3104(c)(1)," the court looked at the specific factual context and held that these contacts were insufficient because they could not be a basis for the plaintiff's causes of action.

The court further finds that the exercise of personal jurisdiction over these defendants comports with federal due process considerations. The Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), held that

> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintainance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316 (citation omitted). The Court in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id.* at 475 n. 18. Therefore, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477. In *Luker,* the Federal Circuit suggested a three-prong jurisdictional analysis: 1) has the defendant purposefully directed its activities at residents of the forum?; 2) do the claims arise out of or relate to those activities?; 3) is the assertion of personal jurisdiction reasonable and fair? *See Luker,* 45 F.3d at 1545-46. The court has already answered the first two inquiries in the affirmative and has not discovered in the record any compelling evidence which suggests that the exercise of

personal jurisdiction over these defendants would be unreasonable.

**\*5** The court concludes otherwise with respect to defendant Phamatech. The conduct attributed to Phamatech includes the following: 1) Phamatech manufactures allegedly infringing products; 2) Phamatech arranges for the distribution of its product through defendants Peninsula and Ramsey; and 3) Phamatech advertises its product through an Internet website accessible to Delaware residents. As noted previously, however, there had been no actual sales of infringing product in Delaware prior to the filing of the complaint. Neither is there evidence relating Phamatech to Peninsula and Ramsey's marketing efforts directed at Delaware residents. Although plaintiff asserts that "Phamatech intentionally established a chain of distribution that it knew, or reasonably could have foreseen, had a termination point in Delaware" (D.I. 62 at 11), the record does not demonstrate the existence of ongoing commercial relationships with retailers and customers in Delaware.

The facts of record are distinguishable, therefore, from the facts in *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994), cited by plaintiff. In that case, the court concluded that the alleged infringers were placing accused products into the chain of commerce, which included shipping products into the forum for sale to customers through an intermediary. Because the commercial relationship with the intermediary was ongoing and the accused products in fact had been shipped into the forum, the court found the defendant amenable to the exercise of personal jurisdiction: "From these ongoing relationships, it can be presumed that the distribution channel formed by defendants and [the intermediary] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was [the forum]." *Royal Sovereign,* 21 F.3d at 1564. Instantly, there is no evidence demonstrating that Phamatech directed Peninsula and Ramsey's sales efforts at Delaware residents; there certainly is no evidence of any ongoing commercial relationships between Phamatech, Peninsula/Ramsey, and Delaware

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

1999 WL 615175 (D.Del.)

(Cite as: 1999 WL 615175 (D.Del.))

residents. The final conduct designated is Phamatech's Internet website. Assuming for purposes of this motion that a website with product information constitutes an "offer to sell," in the absence of evidence that Delaware residents actually accessed this website, the court declines to find that Phamatech transacted business in Delaware, consistent with 10 Del. C. § 3104(c)(1) and (3). [FN8]

> FN8. Plaintiff does not assert general jurisdiction under § 3104(c) (4).

B. Venue

Generally, in reviewing a motion for transfer of venue, this court gives great deference to a plaintiff's choice of forum and only transfers venue if the defendants truly are regional (as opposed to national) in character. Motions to transfer venue are granted as well if there is a related case which has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties. Given the court's conclusion that it cannot exercise personal jurisdiction over defendant Phamatech, the manufacturer of the accused products, transfer of this case to the Southern District of California is warranted.

IV. CONCLUSION

*6 For the reasons stated, defendants' motions to dismiss are granted in part and denied in part. Defendants' motions to transfer venue are granted.

An appropriate order shall issue.

1999 WL 615175 (D.Del.)

Motions, Pleadings and Filings (Back to top)

• 1:99CV00218  (Docket)
                        (Apr. 07, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BAYER AG,                            :
BAYER CORPORATION,                   :
                                     :
        Plaintiffs,                  :
                                     :
    v.                               : Civil Action No. 00-466-JJF
                                     :
BIOVAIL CORPORATION,                 :
ELAN CORPORATION, PLC                :
ELAN PHARMA, LTD                     :
        and                         :
TEVA PHARMACEUTICALS USA, INC        :
                                     :
        Defendants.                  :

MEMORANDUM ORDER

Presently before the Court is the Defendants' Motion to
Dismiss or Transfer.  (D.I. 17).  The Defendants argue that the
case should be dismissed on the basis of res judicata and
collateral estoppel, or in the alternative that the case be
transferred to the Northern District of Georgia, Gainesville
Division.  (D.I. 18 at 1).

Although, the Court has formed a view on the merits of the
Motion to Dismiss, the Court believes that the interests of the
parties and justice would best be served by a resolution of the
issue presented here by the Georgia court which presided over the
related cases.

The Court is authorized to transfer an action pursuant to 28
U.S.C. § 1404(a) where:

> For the convenience of the parties and the
> witnesses, in the interest of justice, a
> district court may transfer any civil action
> to any other district or division where it
> might have been brought.

28 U.S.C.A. § 1404(a) (West 1993).

The Defendants contend is that judicial economy would best be
served if the case was transferred to the Northern District of
Georgia in light of the extensive history of similar litigation
between the parties in that court. (D.I. 18 at 23).  The
Plaintiffs contend that the Defendants do not offer any record
evidence favoring transfer and that the deference given to the
Plaintiffs' choice of forum should not be disturbed.  (D.I. 36 at
31).

    While the Court recognizes that the Plaintiffs' choice of
forum is ordinarily given substantial deference, the need for
judicial consistency outweighs the Plaintiffs' choice of forum in
the instance case.  Given the prior similar and complex
litigation between the parties in the Northern District of
Georgia[1], the Court concludes that it is the proper forum for
adjudication of this case.  The Court credits the Defendants'
representation that this action could have originally been
brought in the Northern District of Georgia (D.I. 18 at 24-5),

---

[1] At oral argument counsel for the Defendants represented
that Judge O'Kelley had completed "80 or 90 percent" of the work
necessary in the instant action.

2

therefore, the case will be transferred to the United States

District Court in the Northern District of Georgia, Gainesville

Division.

       NOW THEREFORE, IT IS HEREBY ORDERED THIS \_\_ DAY OF

JULY, 2000 that Defendants' Motion to Transfer (D.I. 17) is

GRANTED, the Defendants' Motion to Dismiss (D.I. 17) is DENIED

with leave to renew before the Georgia court.

 

                                   _____

                                   UNITED STATES DISTRICT JUDGE

3

Westlaw.

Not Reported in F.Supp.2d

2000 WL 1876477 (D.Del.)

(Cite as: 2000 WL 1876477 (D.Del.))

Page 1

**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
BRUNSWICK CORPORATION Plaintiff,
v.
PRECOR INCORPORATED., Defendant.
No. 00-691-GMS.

Dec. 12, 2000.

Robert W. Whetzel, Richards Layton & Finger, of
Wilmington, DE, Stephen C. Neal, Linda F.
Callison, Jonathan H. Takei and Ricardo Rodriguez
of Cooley Godward LLP, Palo Alto, CA, for
Plaintiff, of counsel.

Samuel David Brickley, II, Connolly, Bove, Lodge
& Hutz of Wilmington, DE, James R. Uhlir,
Stephen P. Fricke, Steven V. Gibbons, F. Ross
Boundy of Christensen O'Connor Johnson
Kindness, Seattle, WA, for Defendants, of counsel.

*MEMORANDUM AND ORDER*

SLEET, J.

*1 On August 1, 2000, the plaintiff, Brunswick
Corporation, and its division Life Fitness ("Life
Fitness") brought this patent infringement action
against Precor Incorporated ("Precor"). Life Fitness
alleges that Precor is infringing its U.S. Patent No.
6,095,951 (" '951 patent") relating to exercise
treadmills. Presently before this court is Precor's
motion to transfer this case to the United States
District Court for the Western District of
Washington, pursuant to 28 U.S.C. § 1404(a).
Because the court finds that a transfer would
convenience the parties and the witnesses while
serving the interests of justice, Precor's motion to

transfer is granted.

I. BACKGROUND

A. The parties

Life Fitness and Precor both design, manufacture,
and sell exercise equipment and both directly
compete with one another in the exercise fitness
market. Although both parties are incorporated in
Delaware, neither party maintains a physical
presence (e.g., offices or facilities) in this state. Life
Fitness has its principal place of business in
Franklin Park, Illinois and Precor has its principal
place of business in Bothell, Washington.

B. Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each
other, nor to patent litigation." D.I. 7, at 2. In 1994,
Precor filed a patent infringement suit against Life
Fitness in the United States District Court for the
Western District of Washington ("1994 litigation").
At issue in the 1994 litigation were U.S. Patent Nos.
5,599,259, 5,752,897 and certain Claims of U.S.
Patent No. 5,382,207 (respectively the " '259, '897,
and '207 patents"). The '207 patent is the parent of
the '951 patent currently at issue in the case before
the court.

In the 1994 litigation, Claims 1-36 of '207 patent
were dismissed on summary judgment in February
1996 leaving only claims 37, 38, and 39 at issue. In
early September 1999, Life Fitness voluntarily
stipulated to the dismissal of the claims for
infringement of the '259 and '897 patents as well as
Claims 38-39 of the '207 patent. As a result of this
stipulation, these claims were dismissed with
prejudice in an order dated September 23, 1999.
*See Precor Inc. v. Life Fitness,* No. C94-1586C
(W.D.Wash. Sept. 23, 1999) (stipulation and order
of dismissal). Thus, the only infringement claim
remaining for trial related to Claim 37 of the '207

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2000 WL 1876477 (D.Del.)

**(Cite as: 2000 WL 1876477 (D.Del.))**

patent. In October 1999, Life Fitness lost at trial as to this one patent claim. The judgment from the 1994 litigation is currently on appeal to the Federal Circuit.

II. DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), the court may transfer this action to "any other district where it might have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving the "interest of justice." 28 U.S.C. § 1404(a) (1993). The parties here agree that Life Fitness could have brought this action in the Western District of Washington. *See* 28 U.S.C. S 1391(b)(1) (1993). Moreover, this lawsuit could have initially been filed in Washington because it is a patent infringement matter. *See* 28 U.S.C. § 1400(b). Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

*\*2* In *Jumara,* the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. 55 F.3d at 879-80; *see also Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 196- 97 (D.Del.1998). These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *Jumara,* 55 F.3d at 879- 80 . [FN1] The court should apply these factors to determine, "on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id.* at 883 (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30-31 (1988)). The burden is on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer. *See Jumara,* at 879.

> FN1. The private interests may include: 1) the plaintiff's original forum preference; 2) the defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience

of the parties; 5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara,* 55 F.3d at 879-880. The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

A. Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most pertinent of the private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois. Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970); *see also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir.1995). In this case, however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2000 WL 1876477 (D.Del.)

**(Cite as: 2000 WL 1876477 (D.Del.))**

manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc. v. Wallace,* 56 F.Supp.2d 542, 545 (E.D.Pa.1999). "[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen ... a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999) . Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

B. Public Factors and the Interest of Justice

*3 Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make trial "easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington. [FN2] Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.,* 102 F.Supp.2d 518, (D.N.J.2000) (citations omitted). Thus, the court finds that transferring this case would promote the interests of justice.

> FN2. The parties disagree as to whether this is a directly related matter.

III. CONCLUSION.

Finding that the balance of convenience and the interests of justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's Motion to Transfer is GRANTED; and

2. This matter shall be TRANSFERRED to the Western District of Washington.

2000 WL 1876477 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

· 1:00CV00691 (Docket)
(Aug. 01, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**REDACTED -- Public Version filed June 1, 2005**

Westlaw.

Not Reported in F.Supp.2d

2001 WL 267881 (E.D.Pa.)

(Cite as: 2001 WL 267881 (E.D.Pa.))

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Paul **EGGEAR** and Karen Eggear, h/w, Plaintiffs,
v.
THE **SHIBUSAWA** WAREHOUSE COMPANY,
LTD. and Armada Maritime Company, Ltd.,
Defendants.
No. CIV.A. 00-CV-4636.

March 19, 2001.

*MEMORANDUM*

KELLY.

*1 Presently before this Court are the Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), and the Motion to Stay Discovery Pending Resolution of Service and Jurisdiction Issues, filed by the Defendant Shibusawa Warehouse Company, Ltd. ("Shibusawa"). Plaintiffs Paul Eggear and Karen Eggear ("Mr. Eggear" and "Mrs. Eggear" or "Plaintiffs") filed this personal injury action against Shibusawa and Armada Maritime Company, Ltd. ("Armada") after Mr. Eggear was injured while unloading steel pipe from a ship moored in Philadelphia, Pennsylvania. Plaintiffs allege that Shibusawa negligently loaded the steel pipe onto the ship in Japan. For the following reasons, the Motion to Dismiss based upon Fed.R.Civ.P. 12(b)(2) (lack of personal jurisdiction) is denied without prejudice, the Motion to Dismiss based upon Fed.R.Civ.P. 12(b)(5) (insufficiency of service of process) will be construed by this Court as a Motion to Quash Service and is granted as such, and the Motion to Stay Discovery is denied as

moot.

I. BACKGROUND

On December 17, 1998, Mr. Eggear was injured while unloading steel pipe from a ship owned by Armada while it was moored in Philadelphia. The injury occurred when the steel pipes on which Mr. Eggear was standing began to roll, causing him to fall. The steel pipe had been loaded in Japan by Shibusawa, a Japanese Stevedoring company. Plaintiffs are both residents of Pennsylvania. Shibusawa is a Japanese corporation which provides logistics management services exclusively in Japan including warehousing, stevedoring and inland transportation within Japan. Plaintiffs initiated this personal injury action on September 12, 2000, alleging that Shibusawa was negligent in loading the pipe. Shibusawa filed the present Motions to Dismiss and Motion to Stay Discovery on January 11, 2001.

II. STANDARD

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. Fed.R.Civ.P. 4(e). The Pennsylvania long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b) (Purdon 1981). "Where the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)". *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3rd Cir.1993) (citations omitted).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 267881 (E.D.Pa.)

**(Cite as: 2001 WL 267881 (E.D.Pa.))**

II. DISCUSSION

A. Personal Jurisdiction

1. General Jurisdiction

In order to be subject to general jurisdiction, the defendant's contacts with the forum must be continuous and substantial. *See Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.,* 819 F.2d 434, 437 (3rd Cir.1987). General jurisdiction requires a significantly greater showing than mere minimum contacts. *Id.* In an uncontroverted affidavit, Shibusawa avers that it has no contacts whatsoever with Pennsylvania. (Def.'s Mot. to Dismiss, Ex. A., Declaration of Koichi Sato). The affidavit states that Shibusawa is a Japanese corporation, with all of its offices, facilities and operations located within Japan. (*Id.*) Shibusawa is not licenced to do business in Pennsylvania and has no subsidiaries in Pennsylvania. (*Id.*) Furthermore, Shibusawa does not own any real estate, personal property, or bank accounts in Pennsylvania and has never leased or maintained any space within Pennsylvania. (*Id.*) Shibusawa has never had any employees in Pennsylvania nor paid any taxes in Pennsylvania. ( *Id.*) All of Shibusawa's stevedoring and other services are performed within Japan. (*Id.*) Shibusawa also has not consented to jurisdiction in Pennsylvania. (*Id.*)

The only contact that Plaintiffs allege that Shibusawa has with Pennsylvania is that Shibusawa is aware that ships that it loads in Japan are unloaded in Pennsylvania. This type of contact is insufficient to establish personal jurisdiction over Shibusawa. *See* section II. A. 2., *infra.* Accordingly, Shibusawa does not have continuous or systematic contacts with Pennsylvania and general jurisdiction cannot be asserted over them. *See Irby v. Isewan Terminal Servs. Co., Ltd., et al.,* NO. 90-2210, 1991 U.S. Dist. LEXIS 18480, at *4 (E.D.Pa. Dec. 18, 1991).

2. Specific Jurisdiction

*2 In order to be subject to specific jurisdiction,

the defendant first must have sufficient minimum contacts with the forum so that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Furthermore, mere foreseeability that the product will enter a forum has never been a sufficient basis for personal jurisdiction under the due process clause. *World-Wide Volkswagen,* 444 U.S. at 295-97. Once minimum contacts are established, the court must decide whether the exercise of personal jurisdiction over the defendants would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Plaintiffs claim that Shibusawa has sufficient minimum contacts with Pennsylvania because Shibusawa loads cargo onto ships in Japan knowing that the cargo will be unloaded in Pennsylvania. Plaintiffs rely heavily on *Muller v. Temura Shipping Co., Ltd.,* 629 F.Supp. 1024 (E.D.Pa.1986) , to support this proposition. In *Muller,* the court found that personal jurisdiction existed over a stevedoring company from the United Kingdom that loaded cargo onto a ship which the stevedore knew was bound for Pennsylvania. *Muller,* 629 F.Supp. at 1026. The court found that the presence of the vessel in Pennsylvania was not fortuitous because the stevedore "should reasonably have expected both that a negligently loaded cargo could cause injury in Pennsylvania and that an injured party would bring suit in Pennsylvania." *Id.* at 1026-27.

Conversely, Shibusawa cites *Irby,* 1991 U.S. Dist. LEXIS 18480, for the proposition that such contacts are not sufficient to subject it to personal jurisdiction in Pennsylvania. In *Irby,* the court found that personal jurisdiction did not exist over a Japanese stevedore who loaded cargo onto a ship which the stevedore knew was bound for Pennsylvania. *Irby,* 1991 U.S. Dist. LEXIS 18480,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 267881 (E.D.Pa.)

(Cite as: 2001 WL 267881 (E.D.Pa.))

Page 3

at *5-*6. The court found that the stevedore did

not have contact with Pennsylvania such that [it] should reasonably anticipate being haled into court here. It cannot be said that defendants purposefully availed themselves of the privilege of conducting activities within this forum. Defendants load cargo onto ships in Japanese ports. It is uncontroverted that defendants have no interest in or control over the ultimate destination of cargo loaded onto these ships.

*3 *Id.* The *Irby* court criticized the *Muller* court for finding jurisdiction based on mere foreseeability and concluded by stating that
[e]ven assuming arguendo that defendants knew that the cargo they loaded was destined for Philadelphia, they do not have sufficient contacts with this forum to support jurisdiction.... Defendants exercise no control over a ship's destination.... Whether or not there is jurisdiction in such a case cannot convincingly turn on the fortuity of whether the carrier or shipper happened to inform the [defendants] of the destination of the ship or whether they were unfortunate enough to have observed a bill of lading while loading the cargo.

*Id.* Shibusawa also argues that *Muller*, 629 F.Supp. 1024, was decided before *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), at a time when it was thought that the purposeful availment test might have been abandoned by the Supreme Court. *See Narco Avionics, Inc. v. Sportsman Mkt., Inc.*, 792 F.Supp. 398, 406 (E.D.Pa.1992)(disagreeing with the plaintiff's reliance on *Muller* and stating that *Muller* "pre-date[d] *Asahi* and [did] not address the need for purposeful availment.")

Plaintiffs also cite other cases in support of their argument, which are distinguishable from the present case. For example, in *Friend v. Interior Trade, Inc.*, No. 86-4073, 1987 U.S. Dist. LEXIS 1935 (E.D.Pa. Mar. 13, 1987), the court exercised jurisdiction over a foreign manufacturer when the plaintiff was injured by defectively packaged bags

that the manufacturer had shipped into Pennsylvania through its United States subsidiary. *Id.* at *1. While the court did cite to *Muller*, 629 F.Supp. 1024, it stated that the case at issue was a stronger case for the exercise of jurisdiction based upon the admitted jurisdiction of the subsidiary and a possible agency theory. *Id.* at *3-*4. In the present case, Shibusawa does not have these extra connections to the forum.

Plaintiffs also cite *Industrial Maritime Carriers, Inc. v. PT (Persaco) Inka*, No. 96-7982, 1998 U.S. Dist. LEXIS 3250 (E.D.Pa. March 9, 1998). In *Industrial Maritime*, the court denied a motion to dismiss for lack of jurisdiction filed by a defendant that was the parent corporation of a foreign stevedore subsidiary that loaded a vessel bound for Pennsylvania. *Id.* at * 2-*3. While the court did discuss *Muller*, 629 F.Supp. 1024, it ultimately denied the motion because there was evidence that the parent corporation had extensive contacts in the United States. *Id.* at *7-*8. Again, the present situation is distinguishable on the basis that Shibusawa is not part of a parent-subsidiary relationship with extensive contacts within the United States.

This Court agrees with the reasoning of the *Irby* court and with Shibusawa. Shibusawa may not be subjected to personal jurisdiction simply because it knew that ships that it loaded were bound for Pennsylvania. This knowledge does not constitute sufficient contacts with Pennsylvania to subject Shibusawa to personal jurisdiction there. *See Irby*, 1991 U.S. Dist. LEXIS 18480. To hold otherwise would not comport with traditional notions of fair play and substantial justice. *Id.*

3. Personal Jurisdiction Based Upon Federal Rule of Civil Procedure 4(k)(2)

*4 Federal Rule of Civil Procedure 4(k)(2) provides a narrow exception to the personal jurisdiction rules which allows
personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

2001 WL 267881 (E.D.Pa.)

**(Cite as: 2001 WL 267881 (E.D.Pa.))**

States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state.

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 258 (3rd Cir.2000)(quoting *World Tanker Carriers Corp. v. MV YA Mawlaya,* 99 F.3d 717, 720 (5th Cir.1996)). Rule 4(k)(2) provides that:

> if the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2). Therefore, in order to meet the requirements of this Rule: (1) there must be a claim arising under federal law, (2) the defendant must possess sufficient contacts with the nation as a whole to subject it to United States' law, but (3) the defendant must lack sufficient contacts to satisfy the personal jurisdiction requirements of any particular state. *BP Chems. Ltd.,* 229 F.3d at 258.

Federal courts have concluded that, for purposes of Rule 4(k)(2), a claim arising under federal law encompasses admiralty and maritime claims. *Industrial Maritime Carriers,* 1998 U.S. Dist. LEXIS 3250, at *8 (citing *World Tanker,* 99 F.3d at 723). Plaintiffs have met this requirement since their claim arises under maritime law. However, Plaintiffs have not met the second and third requirements of Rule 4(k)(2). Plaintiffs have not alleged that Shibusawa has any contacts with the United States apart from loading vessels which may find their way to ports in the United States. In section II. A. 2., *supra,* this Court found that simply loading a ship and knowing the ship's destination is insufficient to maintain personal jurisdiction over a defendant. Plaintiffs also have not shown that Shibusawa lacks sufficient contacts to satisfy the personal jurisdiction requirements of any particular state.

Plaintiffs, not Shibusawa, bear the burden of

proving jurisdiction under Rule 4(k)(2). *Mellon Bank,* 983 F.2d at 554. However, without further discovery on this issue, it is unlikely that Plaintiffs would be able to unearth appropriate contacts. Therefore, further discovery is required to determine whether Shibusawa has sufficient national contacts, other than merely knowing the destination of the ships that it loads, to subject it to the law of the United States, but which are insufficient to satisfy the personal jurisdiction requirements of any particular state.

B. Service of Process

**\*5** Plaintiffs attempted to serve Shibusawa with a copy of the Complaint by sending it via uncertified mail to Shibusawa in Japan. When a Complaint and Summons is served abroad, the validity of service is governed by the Convention on Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, 20 UST 361, TIAS No. 663A ("Hague Convention"). *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988); *Raffa v. Nissan Motor Co.,* 141 F.R.D. 45, (E.D.Pa.1991). Since the Hague Convention is a federal treaty, it pre-empts state law and therefore is the sole determinant of the validity of service of process abroad. *See Gallagher v. Mazda Motor of Am., Inc.,* 781 F.Supp. 1079 (E.D.Pa.1992).

Article 10(a) of the Hague Convention determines whether Plaintiffs' service of process by mail to Shibusawa in Japan was valid. [FN1] *Gallagher,* 781 F.Supp. at 1080. However, there is conflicting authority in the Eastern District as to whether service of process by mail to a defendant in Japan is valid under Article 10(a). *See McElroy v. Yokota Cycle Co.,* No. 92-4517, 1993 U.S. Dist. LEXIS 3834 (E.D.Pa. March 26, 1993)(finding service of process by mail to Japan invalid); *Gallagher,* 781 F.Supp. 1079 (finding same); *Raffa,* 141 F.R.D. 45 (finding same); *but see In re All Terrain Vehicles Litigation,* 1989 U.S. Dist. LEXIS 1843 (E.D.Pa.1989)(finding service of process by mail to Japan valid). [FN2] The Third Circuit has not ruled on this issue.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

2001 WL 267881 (E.D.Pa.)

(Cite as: 2001 WL 267881 (E.D.Pa.))

FN1. Article 10(a) of the Hague Convention states, "[p]rovided the State of destination does not object, the present Convention shall not interfere with,(a) the freedom to send judicial documents, by postal channels, directly to persons abroad."

FN2. Pennsylvania state law appears to agree with the view that service of process to Japan by mail is valid. *See Jordan v. Septa,* 708 A.2d 150 (Pa.Cmwlth.1998); *Sandoval v. Honda Motor Co.,* 364 Pa.Super. 136, 527 A.2d 564 (Pa.Super.1987). However, a state court's interpretation of a federal treaty is not binding on a federal court, even if the federal court's jurisdiction is based on diversity. *Gallagher v. Mazda Motor of Am., Inc.,* 781 F.Supp. 1079, 1082 n. 5 (E.D.Pa.1992).

The interpretation of Article 10(a), which allows service of process by mail to Japan, finds that the term "send" in Article 10(a) is equivalent to "serve", and thus it permits the service of process by mail on any foreign party. *See Gallagher,* 781 F.Supp. at 1082, and the cases cited therein. The second interpretation, which does not allow service of process by mail to Japan, finds that Article 10(a) only provides for the service of subsequent papers after service of process has been effectuated by proper means, and does not provide an independent method for the service of process through the mail system. *See Id.* and the cases cited therein.

The *Gallagher* and *Raffa* courts, which follow the latter interpretation, found that since Japan had objected to the "less intrusive" provisions of Article 10(b) and 10(c), and since Japan does not permit service of process by certified mail in domestic cases, it was highly unlikely that Japan would consent to the service of foreign process by mail. "This, combined with the fact that the Hague Convention uses the term 'service' in all other articles, rather than the term 'send', [led these courts] to hold that [Article 10(a) ] of the Hague Convention" did not provide for service of process

by mail on foreign parties. *Gallagher* 781 F.Supp. at 1082 (citations omitted); *Raffa* 141 F.R.D. at 46-47.

\*6 This Court agrees with the reasoning set forth in the more recent Eastern District cases dealing with this matter; that service of process to Japan by mail is invalid under Article 10(a) of the Hague Convention. *See McElroy,* 1993 U.S. Dist. LEXIS 3834; *Gallagher,* 781 F.Supp. 1079; *Raffa,* 141 F.R.D. 45. Therefore, service of process upon Shibusawa was invalid. When service of process is invalid, district courts have broad discretion to dismiss the action without prejudice or to quash service of process. *Umbenhauer v. Woog,* 969 F.2d 25, 30 (3rd Cir.1992). However, it is inappropriate to dismiss a case if "there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly." Wright & Miller, Federal Practice and Procedure: Civil 2d § Ī354; *Umbenhauer,* 969 F.2d at 30. If this is the case, the court may treat the motion to dismiss as a motion to quash service, thus allowing the plaintiff to effect proper service of process. *Umbenhauer,* 969 F.2d at 30. Here because Shibusawa's address is stable and is known by Plaintiffs and because the statute of limitations will not expire until December 17, 2001, [FN3] there is a reasonable prospect that Plaintiffs will ultimately be able to properly serve Shibusawa. Therefore, Shibusawa's Motion to Dismiss for insufficiency of service of process will be treated as a Motion to Quash Service of Process and will be granted as such.

FN3. There is a three year statute of limitations on maritime claims. *See* 46 U.S.C. § 763a)

III. CONCLUSION

Neither specific nor general jurisdiction may be exercised over Shibusawa based upon the fact that it is aware that the cargo that it loads onto ships in Japan will be unloaded in Pennsylvania. However, discovery must proceed to determine whether Shibusawa has sufficient contacts with the United States as a whole to subject it United States' laws, but lacks sufficient contacts to satisfy the personal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 267881 (E.D.Pa.)

**(Cite as: 2001 WL 267881 (E.D.Pa.))**

jurisdiction requirements of any particular state, so that it may be subject to jurisdiction under Fed.R.Civ.P. 4(k)(2). Furthermore, service of process on Shibusawa by mail to Japan is insufficient and must be quashed.

An appropriate order follows.

*7 *ORDER*

AND NOW, this 19th day of March, 2001, upon consideration of the Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(5) (Dkt. No. 13) and the Motion to Stay Discovery Pending Resolution of Service and Jurisdiction Issues (Dkt. No. 14) filed by Defendant, The Shibusawa Warehouse Company, Ltd. ("Shibusawa"), and any Responses and Replies thereto, it is hereby ORDERED that:
(1) the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) is DENIED without prejudice;
(2) the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(5) is construed as a Motion to Quash Service and is GRANTED as such; and
(3) the Motion to Stay Discovery is DENIED as moot.

2001 WL 267881 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:00CV04636  (Docket)
(Sep. 12, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.