**REDACTED -- Public Version filed June 1, 2005**

Westlaw.

Slip Copy

2005 WL 293509 (D.Del.)

(Cite as: 2005 WL 293509 (D.Del.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
M & M TECHNOLOGIES, INC., Plaintiff,
v.
GURTLER CHEMICALS, INC.,
Defendant/Third-Party Plaintiff,
v.
BURLINGTON CHEMICAL CO., INC.,
Third-Party Defendant.
**No. Civ.A. 03-994 GMS.**

Feb. 8, 2005.
George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE, for Plaintiff and Counter-Defendant.

William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE, Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, for Defendant, Third-Party Plaintiff and Counter-Claimant.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 On October 30, 2003, the plaintiff, M & M Technologies, Inc. ("M & M"), filed this patent infringement action against Gurtler Chemicals, Inc. ("Gurtler"). Presently before the court is a motion to dismiss for lack of personal jurisdiction filed by third-party defendant Burlington Chemical Company, Inc. ("Burlington"). For the following reasons, the court will grant the motion.

II. BACKGROUND

The patent-in-suit, U.S. Patent No. 6,159,548 (the " '548 patent"), allegedly is owned by M & M. The patented invention is a method for oilproofing and waterproofing previously manufactured fabric with an aerosol spray containing a diluted fluoroacrylate emulsion. The complaint alleges that Gurtler has infringed, induced infringement of, or contributorily infringed the method claims of the '548 patent.

On July 12, 2004, Gurtler filed a motion to file a second amended answer, counterclaim, and third-party complaint. The court granted Gurtler's motion on September 22, 2004. Gurtler named Burlington as a third-party defendant and brought claims against Burlington for negligent misrepresentation and violation of the Uniform Commercial Code, Section 2-312, *i.e.* breach of warranty. The third-party complaint alleges in Count I that: (1) Gurtler makes its allegedly infringing product merely by adding water to Burcopel CAT, a product sold to it by Burlington; (2) at the time Burlington began selling Burcopel CAT to Gurtler, Burlington orally represented and warranted that Gurtler's use of the product would not infringe, induce infringement of, or contributorily infringe the '548 patent; and (3) Burlington breached its warranty against infringement. Count II alleges that: (1) Burlington's representation that Burcopel CAT was not infringing was a false representation of fact; (2) Burlington made the false representation because of its lack of reasonable care in ascertaining the facts; (3) Burlington made the false representation with an intention to induce Gurtler to act; (4) Gurtler justifiably relied on the false representation; and (5) Burlington's actions caused Gurtler to incur damages.

Burlington is a North Carolina corporation, with no place of business in Delaware. It neither owns nor leases any property in Delaware. Burlington is not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 293509 (D.Del.)

**(Cite as: 2005 WL 293509 (D.Del.))**

registered with the Secretary of State to do business in Delaware. It maintains no office, local telephone listing, or bank accounts in Delaware, and similarly, has no employees in Delaware. It has not paid taxes or franchise fees in Delaware. Burlington has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except in the current litigation.

Burlington entered into an agreement with Gurtler for the sale of Burcopel CAT, a chemical that adheres to fabric causing it to become water resistant. Pursuant to the terms of the Memorandum of Sale, the product was shipped collect to Gurtler in South Holland, Illinois. [FN1] After receiving the Burcopel CAT, Gurtler dilutes it with water, and distributes and sells the product to its United States and international customers under its "Pulse Shield" trademark.

> FN1. Gurtler is an Illinois Corporation with an established place of business in Sought Holland, Illinois.

*2 Burlington does not sell Burcopel CAT to any customers in Delaware. Burlington's sales of products to Delaware customers in 2001, 2002, and 2003 were less than $1,000.00 each year, and comprised approximately 0.0007% of Burlington's annual sales revenues. In 2004, Burlington directly sold products to three customers in Delaware. Burlington had sales of $4,000.00 to one Delaware customer, $70.00 to a second Delaware customer, and $16,000 .00 to a Delaware distributor. These sales comprised approximately 0.14% of Burlington's 2004 sales revenues.

III. STANDARD OF REVIEW

Burlington moves to dismiss the third-party complaint for lack of personal jurisdiction over the defendant. "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[ ]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,* 197 F.R.D. 112, 119 (D.Del.2000). In determining whether

personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc.,* 544 F.Supp. 864-65 (D.Del.1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elec., Inc.,* 948 F.Supp. 338, 342 (D.Del.1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted). Specifically, Gurtler must show that Burlington "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint, *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.,* 542 F.Supp. 53, 55 (D.Del.1982), but Gurtler bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Burlington. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,* 147 F.Supp.2d 268, 270-71 (D.Del.2001). To meet this burden, Gurtler must adduce facts which 'establish with reasonable particularity' that jurisdiction over the movant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 293509 (D.Del.)

**(Cite as: 2005 WL 293509 (D.Del.))**

exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 193 (D.Del.1996)).

IV. DISCUSSION

A. Delaware's Long-Arm Statute

*3 The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del.Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Burlington. Burlington contends that the court has no basis to assert jurisdiction, while Gurtler maintains that the conduct of Burlington satisfies the requirements of subsections (c)(1) and (c)(4) of the long-arm statute. The court will address each of these sections below.

1. Delaware Long-Arm Statute § 3104(c)(1)

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident who transacts any business or performs any character of work or service in the State. Del.Code Ann. tit. 10 § 3104(c)(1). Gurtler asserts that Burlington has acted in consort with Gurtler to place Burcopel CAT into a nationwide distribution network and, as a result, Burcopel CAT may have found its way to Delaware. Thus, Burlington has availed itself of the benefits of the State of Delaware. The court disagrees.

Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997). The Delaware Supreme Court has interpreted subsection (c)(1) as a specific jurisdiction provision that requires a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). In order to meet the requirements of subsection (c)(1), Burlington's actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. Inc. v. Micron*

*Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993). However, when a manufacturer passes title to goods to a third party outside of Delaware, it has not performed an act in Delaware. *Boone,* 724 A.2d at 1156. In the present case, Burlington did not pass title to Gurtler in Delaware. Rather, Burlington passed title to the Burcopel CAT in South Holland, Illinois. (D.I. 52 ¶ 4). In addition, Burlington's sales of products in Delaware are unrelated to Gurtler's claims and, therefore, cannot give rise to specific jurisdiction. *See ICT Pharms., Inc. v. Boehringer Ingelheim Pharms ., Inc.,* 147 F.Supp.2d 268 (D.Del.2001).

Gurtler maintains that Burlington's actions were directed at Delaware because it engaged Gurtler as a nationwide distributor of Burcopel CAT. Gurtler further asserts that where a party contracts to have its product distributed by another throughout the United States, it contracts to have its product distributed to each state as an individual forum. *See Boone,* 724 A.2d at 1160. The court agrees that a party who contracts to have its product distributed throughout the United States is subject to jurisdiction in any state. There is no evidence in the record, however, that Gurtler was acting as Burlington's distributor of Burcopel CAT. Indeed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it under Gurtler's "Pulse Shield" trademark. Moreover, the Burcopel CAT does not maintain a separate identity in Gurtler's product and Burlington is not identified to the end user. As such, subsection (c)(1) is not a basis for the exercise of jurisdiction over Burlington.

2. Delaware Long-Arm Statute § 3104(c)(4)

*4 Additionally, Gurtler asserts that Burlington has, within the meaning of subsection (c)(4), availed itself of the general jurisdiction of Delaware. Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 4

2005 WL 293509 (D.Del.)

(Cite as: 2005 WL 293509 (D.Del.))

Del.Code Ann. tit. 10 § 3104(c)(1). Gurtler contends that jurisdiction is proper under subsection (c)(4) because Burlington's actions with respect Burcopel CAT have caused tortious injury in Delaware, Burlington maintains significant contacts with the District of Delaware, and Burlington receives substantial revenue from the sale of Burcopel CAT to Gurtler.

Delaware courts have interpreted § 3104(c)(4) as a general jurisdiction provision. *See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,* 295 F.Supp.2d 400, 405 (D.Del.2002); *Boone,* 724 A.2d at 1155 (citing *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 727-28 (Del.Super.1996)). This general jurisdiction provision allows the court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action. *Bell Helicopter,* 295 F.Supp.2d at 405.

First, the court must determine if the alleged acts set forth in the third-party complaint constitute a tortious injury for the purposes of jurisdiction. A tortious act under § 3104(c)(4) is an act "which involves a breach of duty to another and makes the one committing the act liable in damages." *Magid v. Marcal Paper Mills, Inc.,* 517 F.Supp. 1125, 1130 (D.Del.1981). Applying Delaware law, the court finds that the alleged breach of warranty and negligent misrepresentation by Burlington each constitute a breach of duty owed to Gurtler.

Next, the court must determine if Burlington regularly does or solicits business in Delaware. The court concludes that Burlington does not regularly do business in Delaware. As previously discussed, Burlington is a North Carolina corporation, with no office or place of business in Delaware. (D.I. 52 ¶ 2). Burlington has not appointed any agent for service of process in Delaware and is not registered to do business in Delaware. (*Id.*) It has no local telephone listing, bank accounts, real estate or employees in Delaware. (*Id.*) It has not paid any taxes or franchise fees in Delaware. (*Id.*). It has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except for the

current litigation. (*Id.*) The court also concludes that Burlington does not regularly solicit business or advertise in Delaware. Further, while Burlington does maintain an Internet website that it can use to solicit business from Delaware, the mere existence of its website does not rise to the level of regularly soliciting business in Delaware. *See Motorola Inc. v. PC-Tel,* 58 F.Supp.2d 349, 352 (D.Del.1999) (discussing extensive advertising by the defendant, both nationwide and in Delaware through newspapers, magazines, and catalogs). Thus, the court concludes that Burlington does not regularly do or solicit business in Delaware.

*5 Lastly, the court must determine whether Burlington derives substantial revenue from services or things used or consumed in Delaware. Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total revenue is sufficient to confer jurisdiction. *See United States v. Consolidated Rail Corp.,* 674 F.Supp. 138, 144 (D.Del.1987). However, when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction. *Bell Helicopter,* 295 F.Supp.2d at 405. In the present case, Burlington's sales of products to customers in Delaware in 2001, 2002, and 2003 were about $1,000.00 each year, representing 0.0007% of Burlington's annual sales revenues. (D.I. 53, at 2-3). In 2004, Burlington had sales to three customers in Delaware that totaled approximately $20,070.00. (*Id.* at 3). While Burlington's sales of products to Delaware customers grew in 2004, its Delaware revenue only comprised approximately 0.14% of its total annual sales. (*Id.*) Because Burlington's Delaware revenue was less than 1% of its total annual revenue, it is not substantial enough to warrant an exercise of general jurisdiction. The court, therefore, finds that even though the acts alleged in the third-party complaint, if proved, might constitute a breach of duty owed by Burlington, Gurtler has not made a *prima facie* showing of personal jurisdiction over Burlington under § 3104(c)(4) of the Delaware long-arm statute.

B. Due Process

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 5

2005 WL 293509 (D.Del.)

**(Cite as: 2005 WL 293509 (D.Del.))**

The second step in the court's analysis is to determine whether exercising jurisdiction comports with the requirements of the Due Process Clause. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play." ' *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In order to give non-residents "fair warning" that a particular activity may ·subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). [FN2] Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed.Cir.1994).

> FN2. The United States Supreme Court has explained that:
> [t]he "substantial connection" ... between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.... The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State,

advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.
*ICT Pharms.,* 147 F.Supp.2d at 272 (quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

**\*6** Gurtler first asserts that the court should exercise jurisdiction over Burlington because Burlington has purposeful minimum contacts ¯with the State of Delaware of the quantity and type to cause it to reasonably foresee that it would be "haled before a court" located in Delaware. Jurisdiction is proper, according to Gurtler, because it informed Burlington that it diluted Burcopel CAT with water to produce Pulse Shield, which, in turn, it placed into a distribution chain that consisted of laundering facilities across the United States. (D.I. 56, at 4). Burlington, therefore, knew that its Burcopel CAT was shipped nationally as the sole compositional ingredient in Pulse Shield. (*Id.*) Thus, Burlington has minimum contacts to satisfy due process requirements by contracting for the sale of Burcopel CAT to Gurtler, thereby directing its product into the stream of commerce of the United States and Delaware. Gurtler further asserts that, at the time this litigation was brought, Gurtler and Burlington were involved in significant business negotiations involving Burcopel CAT, which included a proposal by Gurtler that Burlington dilute the Burcopel CAT, affix Gurtler's labeling, and ship it directly to Gurtler's clients. (*Id.* at 5). However, as Gurtler points out, a final contract was never entered. Gurtler contends that these negotiations put Burlington on notice that by providing Burcopel CAT to Gurtler, Burlington would be submitting to the jurisdiction of the districts to which the Gurtler product was shipped.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 6

2005 WL 293509 (D.Del.)

**(Cite as: 2005 WL 293509 (D.Del.))**

Gurtler relies on *Boone* and *Motorola* to support its stream of commerce theory. Gurtler argues that, as in *Boone* and *Motorola*, the defendant seeking to be dismissed, *i.e.* Burlington, engaged a distributor, *i.e.* Gurtler, who shipped the defendant's product across the country. Thus, not only did Burlington anticipate the fact that its product would be distributed in all states including Delaware, it took affirmative steps to direct its product to Delaware by and through its agreement with Gurtler. (D.I. 56, at 5).

After reviewing the record, the court finds that Gurtler's reliance on *Boone* and *Motorola* is misplaced because both cases are distinguishable from the present case. First, there is no evidence in the record that Burlington engaged Gurtler to be its exclusive distributor of Burcopel CAT in the United States, which was a critical factor in *Boone*. The court in *Boone* found that the defendant had exhibited an intent to serve the Delaware market because it engaged a resident company as the exclusive distributor of its product in the United States and directly benefitted from the distribution. *Boone,* 724 A.2d at 1160. As previously discussed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it as Pulse Shield. These actions are not consistent with a distributor/distributee relationship. In addition, the record shows that Burlington does not benefit directly from Gurtler's "distribution." Gurtler asserts that Burlington has received approximately $66,770.00 for purchases of Burcopel CAT. However, Gurtler does not assert that the money was a direct benefit from its distribution of Pulse Shield. Rather, it was money that Burlington received from the sale of Burcopel CAT to Gurtler alone. This situation is distinguishable from *Boone,* where the defendant earned $270,000 from sales of its product by its distributor in Delaware. *See id.* at 1158.

*7 Likewise, *Motorola* is distinguishable. First, the *Motorola* defendant's product was integrated into a variety of consumer products manufactured by well-known multi-national corporations. [FN3] The goods produced by the corporations were then placed for sale in well-known retail stores, including Caldor and Circuit City, which all had outlets in Delaware. Further, the products were advertised extensively, both nationwide and in Delaware through newspapers, magazines, and catalogs. *Motorola,* 58 F.Supp.2d at 352. While Burcopel CAT is integrated into Gurtler's Pulse Shield, there is no evidence in the record that Gurtler places the Pulse Shield for sale in well-known retail stores with outlets in Delaware. The record is also devoid of evidence that Gurtler advertises the Pulse Shield, either nationwide or in Delaware.

> FN3. The *Motorola* defendant's product was a softmodem that was integrated into Compaq, Phillips, Samsung, Sharp, and Sony consumer electronic products.

More important, the *Motorola* court found that the licensing fees and royalties from which the defendant derived its revenues "appear[ed] to be based upon the sale to *end users* of products containing its softmodems." *Id.* Indeed, the court noted that the "End User distribution channel" of the defendant's licensing agreement "contemplate[d] sale to retail consumers including consumers in Delaware of 'Shipped End User Product[s]' through retail outlets." *Id.* In the present case, Gurtler does not assert that Burlington derives revenue based on the sale of the Pulse Shield to end users. Conversely, Gurtler asserts that Burlington derives revenue based on its sale of Burcopel CAT to Gurtler.

Another important distinction between *Motorola* and the present case is that the *Motorola* defendant maintained an interactive website from which end users could download modem control commands to their computers to enable them to perform certain functions with the defendant's softmodems. In addition, the customers could order products to test their softmodems and obtain customer support directly from the defendant by telephone and Internet. The record also indicated that Delaware customers had utilized the features of the defendant's support network. *Id.* In the present case, Burlington does not offer the same type of customer support network. According to Gurtler, Burlington

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 293509 (D.Del.)

**(Cite as: 2005 WL 293509 (D.Del.))**

maintains an Internet website that allows potential clients in Delaware to access certain advertisements. The website also provides a toll free phone number for client communication and order solicitation. Burlington's website offerings are not nearly as extensive as those offered by the defendant in *Motorola*. Moreover, Gurtler has not asserted that end users of its Pulse Shield can obtain customer support from Burlington's website or toll free number.

Finally, Gurtler asserts that Burlington has admitted that it transacts certain business in Delaware and, therefore, has not only availed itself to Delaware by implicitly soliciting business in the state, but also it has derived substantial revenue from Delaware. The court disagrees. As previously discussed, Burlington's Delaware revenue for the years 2001 through 2004 was less than 1% of its total annual revenue for each year and, therefore, not substantial enough to warrant an exercise of jurisdiction. Thus, Burlington does not have sufficient contacts with this forum to compel its appearance here without offending the Due Process Clause. [FN4]

> FN4. The court need not address whether jurisdiction in Delaware comports with the "minimum requirements inherent in the concept of 'fair play and substantial justice" ' because Burlington's contacts with Delaware are insufficient to cause it to reasonably foresee being haled before a Delaware court.

*ORDER*

*\*8* For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
  1. Burlington Chemical Company's Motion to Dismiss for Lack of Personal Jurisdiction (D.I.51) is GRANTED.

2005 WL 293509 (D.Del.)

  **Motions, Pleadings and Filings (Back to top)**

- 1:03CV00994  (Docket)

(Oct. 30, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**REDACTED -- Public Version filed June 1, 2005**

Westlaw.

Not Reported in F.Supp.2d                                    Page 1

2001 WL 34368395 (D.Del.)

**(Cite as: 2001 WL 34368395 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Ole K. NILSSEN and Geo Foundation, Ltd.,
Plaintiffs,
v.
OSRAM SYLVANIA, INC. and Osram Sylvania
Products, Inc., Defendants.
No. Civ.A. 00-695-JJF.

May 1, 2001.

Donald F. Parsons, Jr., and Mona A. Lee, of
Morris, Nichols, Arsht & Tunnell, Wilmington,
Delaware, Harry J. Roper, Raymond N. Nimrod,
John E. Titus, and Jonathon Hill, of Roper &
Quigg, Chicago, Illinois, for Plaintiffs, of counsel.

Richard K. Herrmann, of Blank Rome Comisky &
Mccauley LLP, Wilmington, Delaware, Brian D.
Sieve, Thomas G. Pasternak, Andrew M. Johnstone,
and Kevin J. O'Shea, of Kirkland & Ellis, Chicago,
Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is Defendants'
Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)
(D.I.15). For the reasons stated below, the Court
will grant the motion.

BACKGROUND

Ole K. Nilssen ("Mr.Nilssen") is a Florida resident
with his principal place of business in Chicago,
Illinois. [FN1] (D.I. 1 at ¶ 4). Mr. Nilssen is
engaged in the business of "identifying, formulating
plans for, developing know-how and technology

for, and implementing (via licensing agreements)
promising new business opportunities in the field of
electronics, including electronic ballasts." (D.I. 1 at
¶ 8). Geo Foundation ("Geo") is a non-profit
corporation incorporated in the Cayman Islands,
British West Indies. (D.I. 1 at ¶ 5)(Mr. Nilssen and
Geo collectively referred to as "Plaintiffs").

> FN1. Mr. Nilssen contends that his
> ongoing business in Illinois, Innovations
> Center, "is now defunct." (D.I. 24, Exh. 1
> at ¶ 8). However, Plaintiffs' Complaint
> alleges that Mr. Nilssen is currently
> engaged in "business opportunities." (D.I.
> 1 at ¶ 4). Further, Mr. Nilssen admits that
> he still travels to Illinois regularly to
> "bring closure to [his] other business
> dealings that take place in Illinois." (D.I.
> 24, Exh. 1 at ¶ 8). The Court concludes
> that, for purposes of the instant motion,
> this record sufficiently establishes that Mr.
> Nilssen's principal place of business is in
> Illinois.

OSRAM Sylvania, Inc. and OSRAM Sylvania
Products, Inc. (collectively "Defendants") are
Delaware corporations with their principal places of
business in Danvers, Massachusetts. (D.I. 13 at ¶
6-7). Defendants are engaged in the business of
making and selling electronic ballasts. (D.I. 13 at ¶
¶ 11).

Plaintiffs filed the instant action against Defendants
on August 1, 2000. In their Complaint, Plaintiffs
contend that Defendants wilfully infringe twenty-six
patents that were invented and are owned by Mr.
Nilssen and of which Geo holds exclusive licenses.
[FN2] (D.I. 1 at ¶¶ 9, 10, 13). On January 24,
2001, Defendants filed the instant motion to transfer
the case to the United States District Court for the
Northern District of Illinois. (D.I.15).

> FN2. These patents include U.S. Patent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

2001 WL 34368395 (D.Del.)

(Cite as: 2001 WL 34368395 (D.Del.))

No. B1 4,667,345; U.S. Patent No. 4,857,806; U.S. Patent No. 4,954,754; U.S. Patent No. 4,983,887; U.S. Patent No. 5,013,974; U.S. Patent No. 5,047,690; U.S. Patent No. 5,164,637; U.S. Patent No. 5,185,560; U.S. Patent No. 5,189,342; U.S. Patent No. 5,191,262; U.S. Patent No. 5,214,356; U.S. Patent No. 5,233,270; U.S. Patent No. 5,341,067; U.S. Patent No. 5,343,123; U.S. Patent No. 5,402,043; U.S. Patent No. 5,416,386; U.S. Patent No. 5,432,409; U.S. Patent No. 5,446,347; U.S. Patent No. 5,471,118; U.S. Patent No. 5,479,074; U.S. Patent No. 5,481,160; U.S. Patent No. 5,510,680; U.S. Patent No. 5,510,681; U.S. Patent No. 5,621,279; U.S. Patent No. 5,736,819 and U.S. Patent No. 6,002,210. (D.I. 1 at ¶ 9).

DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiffs could have brought the instant action in the Northern District of Illinois, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors. These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum. *Memminger v. InfoCure Corp.,* C.A. No. 00-707-JJF, slip op. at 4 (D.Del. Nov. 14, 2000)(citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)). [FN3] These factors also include several public interests:

FN3. *Jumara* also listed the following private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other *Jumara* factors. *Memminger,* slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not considered them separately. *Id.*

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.
*2 *Id.* (citing *Jumara,* 55 F.3d at 879-80). When determining whether or not transfer is warranted under the circumstances, district courts must balance all of the relevant factors. *Jumara,* 55 F.3d at 883. "The burden is upon the [moving party] to establish that the balance of the [factors] strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Memminger,* slip op. at 4-5. Below, the Court will analyze the factors relevant to the instant motion.

A. Convenience of the Parties

The Court concludes that the convenience of the parties due to their relative physical and financial conditions weighs slightly in favor of transfer. Defendants' principal places of business are located in Danvers, Massachusetts. (D.I. 16 at 5). Many of Defendants' accused products are manufactured in Lake Zurich, Illinois, which is within the Northern District of Illinois. (D.I. 16 at 5). Defendants' contacts with Delaware, on the other hand, are minimal: Defendants are incorporated under Delaware law, Defendants have one salesperson who works out of a home office in Delaware, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

2001 WL 34368395 (D.Del.)

(Cite as: 2001 WL 34368395 (D.Del.))

some of Defendants' accused products are sold in Delaware. [FN4] (D.I. 16 at 5). *See Memminger,* slip op. at 6-7 (recognizing that the mere fact a defendant is incorporated in a given forum does not mean that transfer to another forum is not warranted); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730-30 (S.D.N.Y.1998)(holding that the Southern District of New York's connection to the litigation was "tenuous" for purposes of venue transfer analysis when the defendant was incorporated in New York and over 100 of the defendant's allegedly infringing products were sold in New York). Also supporting the requested transfer is the fact that Mr. Nilssen's principal place of business is in Illinois, and that several of his current and former employees reside in Illinois.

> FN4. Plaintiffs' contention that their "claim arose" in Delaware, because some of Defendants' accused products are sold in Delaware, lacks merit. Defendants' products are sold nationwide; therefore, Delaware does not have any special "connection" to the case that would weigh against the requested transfer.

Based on these considerations, the Court concludes that it would be more convenient to litigate in the Northern District of Illinois rather than in Delaware. However, this factor weighs only slightly in favor of transfer because both Defendants are large companies that are financially capable of litigating in a distant forum. *Motorola Inc. v. PC-Tel. Inc.,* 58 F.Supp.2d 349, 358 (D.Del.1999)(holding that when the party seeking transfer is a multimillion dollar company, unless the company can articulate "some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

B. Convenience of the Witnesses

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505,

510 (D.Del.1999). The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.,* 2000 WL 1728354, at *4 (D.Del. Feb. 11, 2000)(quoting *Jumara,* 55 F.3d at 879). A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics,* 77 F.Supp.2d at 511. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial. *Id.*

*3 In the instant case, Defendants contend that no witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene--an employee of Mr. Nilssen, (2) Robert Schneider--a former employee of Mr. Nilssen, (3) employees of Defendants, (4) employees of Motorola, Inc, and (5) employees of Advance Transformer, Inc. ("Advance"). (D.I. 16 at 10). In response, Plaintiffs contend that Defendants' contentions are unavailing because (1) Defendants have failed to explain the nature of these witnesses' testimony, and in several cases, have even failed to name the witnesses, (2) Defendants have failed to show that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendants have not alleged that any witnesses actually will be unavailable for trial. (D.I. 25 at 11).

The Court concludes that Plaintiffs' second and third arguments can be summarily rejected. As to Plaintiffs' third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable for trial. As to Plaintiffs' second argument, the Court concludes that videotaped depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because "[v]ideo depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.,* 1997 U.S. Dist. LEXIS 22902, at *11 n. 4 (D.Del. July 30, 1997).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

2001 WL 34368395 (D.Del.)

(Cite as: 2001 WL 34368395 (D.Del.))

Plaintiffs' first argument warrants more consideration. One of these witnesses, Dale Fiene, is a current employee of Mr. Nilssen; therefore, the Court concludes that Mr. Fiene should not be considered in the analysis. [FN5] (D.I. 24 at 9). The Court also agrees that Defendants' employees do not weigh into the analysis. However, Mr. Schneider, a former employee of Mr. Nilssen, and employees from Motorola and Advance do warrant consideration because they are potential third party witnesses.

> FN5. To the extent that Mr. Nilssen admits that Mr. Fiene is a current employee, such admission belies Mr. Nilssen's attempt to downplay the extent of · his business contacts in Illinois.

Plaintiffs contend that these potential third party witnesses do not weigh in favor of transfer because Defendants have failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 24 at 10-11). However, Defendants specifically identify Mr. Schneider and note that his testimony is relevant because Mr. Schneider has submitted a number of affidavits to the PTO on Mr. Nilssen's behalf. (D.I. 16 at 10). Mr. Schneider's knowledge is relevant to Defendants' affirmative defenses, especially Defendants' allegations of inequitable conduct by Mr. Nilssen during the prosecution of many of the patents in suit.

Defendants' potential witnesses from Motorola and Advance have not been identified by name. However, Defendants indicate that Motorola's employees will testify about Motorola's business dealings with Mr. Nilssen and about prior art to the patents in suit. (D.I. 16 at 10). Defendants also indicate that Advance's employees will provide relevant testimony about a reasonable royalty and about prior art. [FN6] (D.I. 16 at 10). The Court concludes that such identification, especially when fact discovery has yet to take place and when Plaintiffs have yet to specify the specific patent claims and products implicated in the lawsuit, is sufficient for purposes of venue transfer analysis. [FN7] Therefore, the Court concludes that the

convenience of the witnesses strongly weighs in favor of transfer.

> FN6. Advance's employees are knowledgeable on such issues because Advance has a license agreement with Mr. Nilssen. (D.I. 16 at 10).

> FN7. The cases cited by Plaintiffs in which the Court refused to afford unnamed witnesses any weight in the analysis involved situations where the movant merely stated that some witnesses existed that would not be available for trial. (D.I. 24 at 10-11)(citing *Motorola,* 58 F.Supp.2d at 359; *Sunds Defribator, Inc. v. Durametal Corp.,* 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997)). Defendants' identification of the witnesses distinguishes the instant case from *Motorola* and *Sunds Defribator.*

C. Practical Considerations

*4 The Court also concludes that practical considerations regarding the ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 206 (D.Del.1998). In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. *Brunswick Corp. v. Precor Incorp.,* 2000 WL 1876477, at *3, n. 2 (D.Del. Dec. 12, 2000).

In the instant action, Plaintiffs allege infringement of twenty-six patents, at least six of which are also being litigated in the Northern District of Illinois. [FN8] In the Illinois cases, *Markman* rulings have already been issued and case dispositive motions have already been filed. (D.I. 16 at 4). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

2001 WL 34368395 (D.Del.)

**(Cite as: 2001 WL 34368395 (D.Del.))**

construe at least six of the same patents, [FN9] and to render *Markman* rulings on each of these patents, is a factor that strongly weighs in favor of transfer. [FN10]

> FN8. The number of patents in the instant case that overlap with patents involved in cases pending in the Northern District of Illinois is in dispute. Defendants contend that thirteen of the patents in this case are being litigated in *Nilssen v. Motorola, Inc.,* Case No. 96-5571, and that three of these patents are also being litigated in *Nilssen v. MagneTek, Inc.,* Case No. 98-2229. (D.I. 16 at 4). Plaintiffs respond that only six patents overlap between the *Motorola* case and the action presently before the Court. (D.I. 24 at 12 & n. 4). The Court concludes that it is unnecessary to determine exactly how many of the patents overlap and will accept as true, for purposes of this motion, that only six patents overlap.

> FN9. Defendants point out that the file wrapper for one of the overlapping patents consists of over 1,700 pages.

> FN10. Plaintiffs contend that the doctrine of collateral estoppel will prevent any waste of judicial resources by precluding duplicative litigation. However, collateral estoppel only applies when a final judgment is rendered, so it could take months or years for collateral estoppel to become applicable. If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.

CONCLUSION

In balance, the Court concludes that the relevant

factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. [FN11] As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

> FN11. Plaintiffs contend that they have a legitimate desire to litigate in Delaware in order to quickly resolve the matter, and that this factor weighs in favor of transfer. (D.I. 24 at 12). However, the statistical evidence submitted by Defendants reveal that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I.16, Exh. H). Furthermore, Plaintiffs have admitted that the slow pace in the cases pending in the Northern District of Illinois is "due to the pace set by the lawyers." (D.I. 25, Exh. B at 2). Plaintiffs nonetheless assert that, because a trial date has already been set in the instant case for February 11, 2002, the instant suit will be resolved more quickly if tried in Delaware. However, in complex patent cases such as this, the initial trial date is often pushed back as discovery problems arise. Considering the number of patents at issue in this case and that discovery has yet to commence, the February 11, 2002 trial date looks unrealistic.
>
> After the briefing in this matter was completed, Plaintiffs sent two letters to the Court (D.I. 27; D.I. 28) indicating that the summary judgment motions pending in the Northern District of Illinois cases were going to be further delayed because the motions had been referred to a special master. However, the Northern District of Illinois's referral order, which is attached to one of Plaintiffs' letters, highlights the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 34368395 (D.Del.)

**(Cite as: 2001 WL 34368395 (D.Del.))**

> fact that quick resolution of the lawsuit in this District is unlikely. The Order stated that: "the voluminous documents and arguments involved in the case" and "the legal and factual complexity of the case" would be such a drain on judicial resources that the appointment of a special master is warranted. (D.I.28). The Court concludes that requiring two different courts to duplicate much of the same work would be inefficient and would not produce a more expedient resolution in this forum.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this *1* day of May, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15) is *GRANTED*.

2001 WL 34368395 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00695  (Docket)
                    (Aug. 01, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.

1995 WL 118461 (E.D.Pa.)

(Cite as: 1995 WL 118461 (E.D.Pa.))

Page 1

c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
ORANGE PRODUCTS, INC., Plaintiff,
v.
Howard WINTERS and Engineering Labs, Inc.,
Defendants.
**No. CIV. A. 94-CV-6004.**

March 21, 1995.

MEMORANDUM

BUCKWALTER.

*1 Before the court is defendants' Joint Motion to Dismiss for Lack of Jurisdiction and for Improper Venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3), respectively, and, alternatively to Transfer Venue to the District of New Jersey. For the reasons outlined below, defendants' Motions are granted in part and denied in part.

I. BACKGROUND

In October of 1994, plaintiff filed a complaint against defendants alleging that defendant Howard Winters ("defendant Winters"), and by extension defendant Engineering Labs, Inc. ("defendant Engineering"), breached an employment agreement which plaintiff maintains contained a covenant not to compete. Plaintiff is a company in the business of manufacturing plastic balls for use in roll-on deodorants and other products. Defendant Winters began his employment with NASCO International, Inc. ("Nasco"), plaintiff's parent company, in 1979. On or about June 21, 1984 defendant Winters

entered into an employment agreement with Nasco. The agreement was signed and entered in Chatham, New Jersey and its terms stipulated that defendant Winters was to refrain from the use of any "trade secrets and/or proprietary rights in any manner contrary to the interests of NASCO" for a period of five years after termination of his employment. In 1986, Nasco sold Orange Products, Inc. to its present owners Mr. Sachdev and Mr. Verdi who continued to operate the business at the Chatham location until 1991 when it was moved to its current address in Allentown, Pennsylvania. Defendant Winters assisted in the relocation and setup at the new location but resigned from Orange Products in February, 1993. In June of 1994, after a brief period of employment with another company, defendant Winters began his employment with Engineering Labs which is located in New Jersey.

Plaintiff filed the instant action alleging that "there is likely to be evidentiary support" to prove that defendant Winters "has disclosed or used the confidential information" acquired during his employment with plaintiff company, "for the purpose of furthering [Engineering Labs, Inc.'s] business as a competitor of plaintiff." Plaintiff contends that such disclosures will cause irreparable harm to its business and seeks to enjoin any further disclosures.

II. LEGAL STANDARD

Federal Rule of Civil Procedure 4(e) establishes that a federal court may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the state in which it sits. Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons.Stat.Ann. § 5322(b) (Purdon 1981). When a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1995 WL 118461 (E.D.Pa.)

**(Cite as: 1995 WL 118461 (E.D.Pa.))**

personal jurisdiction defense is raised, the plaintiff must establish either that the cause of action arose from the forum-related activities of the defendant (specific jurisdiction) or that the defendant has "continuous and systematic" contacts with the forum state (general jurisdiction). *Mellon Bank (East) v. Diveronica Bros.,* 983 F.2d 551, 554 (3d Cir.1993). It is therefore not the defendant, but the plaintiff who is required to sustain its burden of proving, through affidavits or other competent evidence, that the court has *in personam* jurisdiction. *Time Share,* 753 F.2d at 67 n. 9; *Jaffe v. Julien,* 754 F.Supp. 49, 51 (E.D.Pa.1991). It is not enough for the plaintiff to rely on the pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion; instead, the plaintiff must respond to the defendant's motion with affidavits, *Patterson by Patterson v. F.B.I.,* 893 F.2d 595, 603- 4 (3d Cir.1990), and "actual proofs, not mere allegations." *Time Share,* 753 F.2d at 67 n. 9.

III. DISCUSSION

**\*2** In support of its argument that this court can exercise jurisdiction over defendants, plaintiff has proffered the affidavit of Paul Sachdev, President, Chief Executive and Treasurer of Orange Products, Inc. As to defendant Winters, Mr. Sachdev's affidavit states the following: 1) beginning in July 1991 and continuing through the following six to eight months, defendant Winters lived in Allentown, Pennsylvania while working at plaintiff company; 2) at the end of this time period, defendant Winters commuted from New Jersey to Allentown; 3) defendant Winters obtained trade secrets concerning the manufacture of hollow plastic balls while in the employ of plaintiff; 4) defendant Winters entered into an employment agreement with plaintiff which contained a covenant not to compete; and, 5) following termination of his employment with plaintiff, defendant Winters began employment with defendant Engineering. Defendant Winters submitted two affidavits to the court which offer amplification of several of the statements made in the Sachdev affidavit. In particular, defendant Winters states: 1) he stayed in the Allentown apartment, which was rented and maintained by plaintiff, only two to three nights per

week to lessen the commute to and from his home in New Jersey and never intended to relocate to Pennsylvania; 2) he never provided any of plaintiff's manufacturing or development processes to Engineering Labs or any other entity; and, 3) following termination of his employment with plaintiff, he was employed by AMS America Corp. for sixteen months.

In determining whether exercise of specific jurisdiction is fair, the court in *Strick Corp. v. A. J. F. Warehouse Distrib., Inc.,* 532 F.Supp. 951, 957 (E.D.Pa.1982), articulated several factors which the United States Supreme Court has made clear require evaluation: 1) has the defendant purposefully availed itself of the privilege of conducting activities within the forum? *See Hanson v. Denkla,* 357 U.S. 235, 251 (1958); 2) did the cause of action arise from defendant's activities within the forum? *See McGee v. International Life Insur. Co.,* 355 U.S. 220, 223 (1957); and, 3) were defendant's actions in the forum state substantial enough to make the exercise of jurisdiction over it reasonable? *See International Shoe Co. v. Washington,* 326 U.S. 310, 326 (1945). In sum, defendant's contacts with the forum must rise to a level such that the defendant would be able to reasonably anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Applying these principles to the question of specific jurisdiction as to defendant Winters, this court finds that it can assert *in personam* jurisdiction over defendant Winters.

Defendant Winters purposefully availed himself of the privileges of conducting activities in Pennsylvania by continuing his employment with plaintiff Orange Products, Inc. after Orange Products relocated to Pennsylvania. Defendant Winters made the decision to actively pursue his employment with plaintiff company; accordingly, defendant Winters cannot be described as a "passive defendant" who is being forced to appear in an inconvenient forum on the basis of contacts which he did not initiate. *See Stick,* 532 F.Supp., at 958.

**\*3** Further, this court finds that the cause of action

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3

1995 WL 118461 (E.D.Pa.)

**(Cite as: 1995 WL 118461 (E.D.Pa.))**

at issue can be said to have arisen from defendant Winter's activities within Pennsylvania. While the employment agreement involved in this dispute presumably was signed in New Jersey to safeguard information that was then being shared, its protective nature was transferred to Pennsylvania when plaintiff company relocated. *See Horne v. Adolph Coors Co.,* 684 F.2d 255 (1982) (fictional situs of state trade secret and patent at the residence of the owner). Contrary to defendants' assertions, it is of no import that plaintiff has not proffered any evidence to demonstrate that defendant Winters learned new or additional manufacturing information or trade secrets while in Pennsylvania to support its claim that "all unlawful activities complained of have taken place, in whole or in part," within Pennsylvania. The company's change of situs does not diminish the ability of plaintiff to invoke the employment agreement to safeguard the information it was designed to protect. While it is true, as defendants assert, that to the extent defendants are breaching the agreement they are doing so in New Jersey, any harm to be suffered by plaintiffs will be felt in Pennsylvania. Therefore, jurisdiction over defendant Winters in Pennsylvania is proper based on the "effects" of his New Jersey conduct in Pennsylvania. *Calder v. Jones,* 465 U.S. 787, 789-790 (1984).

Finally, this court finds defendant Winters's acts in Pennsylvania were substantial enough to make this court's exercise of jurisdiction over him reasonable. The record reveals that he worked at the Allentown location for over one year. Accordingly, this court concludes that it can exercise *in personam* jurisdiction over defendant Winters.

While the court can exercise jurisdiction over defendant Winters, the record does not support the conclusion that we can exercise jurisdiction over defendant Engineering. To support its argument that this court can exercise jurisdiction over defendant Engineering, plaintiff offers the Sachev affidavit which states as follows: 1) defendant Engineering advertises in the Thomas Register, a national trade publication; 2) defendant Engineering has sold and continues to sell its product to purchasers in Pennsylvania; and, 3) over the past fifteen years,

defendant Engineering has purchased seven to eight pieces of heavy equipment used in the manufacture of plastic balls from a Philadelphia company at a cost of approximately \$30,000 each. Daniel Mason, president and chief executive officer of Engineering Labs, Inc. has submitted two affidavits which offer amplification of several of the statements made in the Sachdev affidavit. In particular, defendant Engineering states the following: 1) all of the plastic balls manufactured at defendant company are solid; the company is not now nor has it ever been engaged in the manufacture of plastic hollow balls; 2) defendant Winters has not shared any trade secrets and his work with defendant Engineering is wholly unrelated to the developments he was involved with at plaintiff company; 3) defendant Engineering has only purchased five Lapping machines from a Philadelphia company over the past fifteen to twenty years; 4) defendant Engineering has never directly or indirectly solicited business in Pennsylvania or elsewhere; 5) the six small accounts defendant Engineering has in Pennsylvania were all acquired prior to the employment of defendant Winters and defendant Engineering sells to them occasionally at their request; and, 6) total sales to these Pennsylvania accounts during defendant Winters's tenure at defendant company (six months at the time the affidavit was executed) equal \$51,000 or 2.7% of defendant Engineering's total \$1.9 million sales volume. Applying the aforementioned principles to the question of specific jurisdiction as to defendant, this court finds that we cannot assert specific jurisdiction.

**\*4** While it is undisputed that defendant Engineering maintains six accounts with Pennsylvania interests, it cannot be found that defendant Engineering "purposefully availed" itself of the privileges of conducting business in Pennsylvania as defendant Engineering's affidavits establish it did not actively solicit that business.

The touchstone of specific jurisdiction is that its exercise must be confined to causes of actions which arise from the non-resident corporate defendant's contacts with the forum state. That condition is not satisfied by the facts of this case.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 4

1995 WL 118461 (E.D.Pa.)

(Cite as: 1995 WL 118461 (E.D.Pa.))

Because the existence of the six accounts *predated* defendant Winters's arrival at Engineering Labs, Inc., the present cause of action cannot arise from these contacts as neither plaintiff nor defendant Winters were parties to their creation. Plaintiff argues that the "effects" theory bolsters a finding of specific jurisdiction as the harm felt by the breach would be felt in Pennsylvania, possibly becoming manifest through the aforementioned six accounts. While plaintiff's argument has merit, it is not sufficient to support a finding of specific jurisdiction.

Failing to establish the ability of this court to assert specific jurisdiction over defendant Engineering, we must now determine if we can assert general jurisdiction. As previously stated, general jurisdiction focuses on whether the non-resident defendant has "continuous and systematic" contacts with the forum state. This type of jurisdictional basis generally is found where the defendant "makes a substantial number of direct sales in the forum, solicits business regularly and advertises in a way specifically targeted at the forum market." *Strick,* 532 F.Supp., at 956. An additional consideration is whether defendant's contacts with the forum state were "central to the conduct of its business." *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 438 (3d Cir.).

Plaintiff has failed to show defendant Engineering specifically targeted the Pennsylvania market as the mere fact that it advertises in a national trade journal which circulates in Pennsylvania is not enough. *Id.,* at 957. Likewise, plaintiff has failed to establish that defendant Engineering regularly solicits business in Pennsylvania. While the record reveals defendant Engineering does business in Pennsylvania, defendant Engineering has proffered affidavits which establish that it did not solicit or otherwise act to attract that business. In addition, the purchase of five machines from a Pennsylvania business spread out over a fifteen to twenty year period does not demonstrate "continuous and systematic" contacts with Pennsylvania. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.W. 408, 418 (1984). Moreover, defendant Engineering did not make a substantial number of

direct sales to Pennsylvania as only $51,000 of defendant's $1.9 million total sales were generated from Pennsylvania contacts. Finally, defendant's sales to Pennsylvania are not central to its business of producing precision plastic balls. While it cannot be denied that the desired end result of production is to sell the product, the type of activity contemplated by the "central to the conduct of its business" language is the day to day operation of defendant's business, not the resultant sales. *See Provident Nat. Bank,* 819 F.2d at 438. Therefore, based on the foregoing, this court concludes that it cannot exercise general jurisdiction over defendant Engineering.

*5 In opposition to this court's finding that jurisdiction cannot be asserted against defendant Engineering, plaintiff urges the court to dismiss the Motion to Dismiss as the "record is incomplete." Plaintiff relies on the Third Circuit Court of Appeals decision in *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283 (3d Cir.1994) to support its position. The *Renner* court, in reliance on several cases in which the right of plaintiffs to conduct discovery before dismissal for lack of personal jurisdiction was recognized, held that "under the circumstances" of that case the district court should have permitted discovery before ruling on the motion to dismiss. The *Renner* case involved a Hong Kong based corporate defendant about whom plaintiffs lacked crucial information needed to withstand a motion to dismiss. This court finds that the circumstances present in *Renner* are not present in the instant case. Accordingly, the motion will not be dismissed as premature to permit discovery.

Turning now to defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404 [FN1], this court finds that venue properly has been laid in this district and that defendants have not sufficiently demonstrated cause to transfer the case and override plaintiff's choice of forum. *Cain v. DeDonatis,* 683 F.Supp. 510, 512 (E.D.Pa.1988)(outlining factors to be considered in motion to transfer). Accordingly, defendants' Motion to Transfer is denied. However, because this court lacks personal jurisdiction over defendant Engineering, defendant Engineering is dismissed as a party to the present action.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

REDACTED -- Public Version filed June 1, 2005

Not Reported in F.Supp.

1995 WL 118461 (E.D.Pa.)

**(Cite as: 1995 WL 118461 (E.D.Pa.))**

An order follows.

ORDER

AND NOW, this 21st day of March, 1995, upon consideration of defendants' Motion to Dismiss for Lack of Jurisdiction and for Improper Venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3), respectively, and, alternatively to Transfer Venue to the District of New Jersey and plaintiff's response thereto, it is hereby ORDERED that:

1) defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to defendant Engineering Labs, Inc. is GRANTED and defendant is dismissed as a party to this suit;

2) defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to defendant Howard Winters is DENIED;

3) defendants' Motion to Dismiss for Improper Venue is DENIED;

4) defendants' Motion to Transfer Venue is DENIED.

> FN1. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

1995 WL 118461 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:94CV06004 (Docket)
(Oct. 03, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**REDACTED -- Public Version filed June 1, 2005**

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

2003 WL 179996 (D.Del.)

(Cite as: 2003 WL 179996 (D.Del.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
THE **ORIGINAL CREATINE** PATENT
COMPANY, LTD, Plaintiff,
v.
KAIZEN, INC., Defendant.
No. Civ.A. 02-471-SLR.

Jan. 22, 2003.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 22nd day of January, 2003, having reviewed defendant's motion to dismiss or, in the alternative, to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I.14) is granted, for the reasons that follow: [FN1]

> FN1. Because the court is transferring the action to California, Kaizen's motion to dismiss for lack of personal jurisdiction is denied as moot. Kaizen's motions for protective orders (D.I.25, 31) and OCPC's motion to strike (D.I.10) are denied without prejudice to renew.

1. Introduction. On July 11, 2002, plaintiff, The Original Creatine Patent Co., Ltd. ("OCPC"), filed an amended complaint for patent infringement against defendant Kaizen, Inc. ("Kaizen"). [FN2] (D.I.7) The patents-in-suit are United States Patent

Number 5,757,159 ("the '159 patent") and United States Patent Number 5,968,544 ("the '544 patent"). OCPC alleges that Kaizen has made, used, offered for sale, and continues to do the same, creatine-containing products embodying the invention patented in the '544 patent. OCPC further contends that Kaizen has marketed and sold creatine-containing products embodying the invention in the '159 patent. Kaizen filed an answer and asserted affirmative defenses, including inequitable conduct and bad faith. (D.I.9) Kaizen then filed this motion to dismiss or transfer to the Central District of California. (D.I.10) OCPC responded with a motion to strike and/or dismiss fifteen of Kaizen's affirmative defenses. (D.I.10) ⁻ ˙ ˙

> FN2. OCPC filed the original complaint incorrectly against Kaizen, Inc., a Delaware corporation unrelated to this action. (D.I.1, 15)

2. Background. OCPC is an English corporation with its principal place of business in Leeds, United Kingdom. (D.I.7, ¶ 2) OCPC is the assignee of the two patents-in-suit, the '159 patent, issued to inventors Eric Hultman and Roger C. Harris, and the '544 patent, issued to inventors Alan N. Howard and Roger C. Harris. (*Id.* at ¶¶ 5-6) While Hultman resides in Sweden, Howard and Harris reside in the United Kingdom. (D.I.19, Ex. 1) The attorneys who prosecuted the patents are located in Washington, D.C. and Chicago, Illinois. OCPC has filed four other actions to enforce the patents-in-suit against different defendants, all of which are pending before this court.

3. Kaizen is a California corporation with only one office located in Los Angeles, California. (D.I.15, Ex. A) Kaizen is a corporation involved in the advertising, distribution and sales of health food products. (*Id.* at ¶ 2) In 1998, Kaizen entered a licensing agreement to market, distribute and sell creatine-containing products from a German

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                         Page 2

2003 WL 179996 (D.Del.)

**(Cite as: 2003 WL 179996 (D.Del.))**

company under the trade-name Creapure[TM]. (*Id.* at ¶ 4) Kaizen claims that all its documents, and employees are located in California. With the exception of two potential witnesses, [FN3] Kaizen indicates the remaining reside in California.

> FN3. There are two witnesses located in Georgia and Canada. (D.I. 15 ¶ 9)

4. Standard of Review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 208 (D.Del.1998).

*2 The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin*, 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.*, 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte*, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F.Supp. 556, 562 (D. Del 1998) ; *Siemens Medical Systems, Inc. v. Fonar Corporation*, C.A. No. 95-261-SLR, slip. op. at 8 (D.Del. Nov. 1, 1995); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, 2001 WL 1617186 (D.Del. Nov. 28, 2001). Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden

remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F.Supp. 973, 976 (D.Del.1993).

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) . Although emphasizing that "there is no definitive formula or list of factors to consider," *id.*, the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

5. Discussion. Kaizen argues the public and private interests weigh in favor of a transfer to the Central District of California. Specifically, Kaizen argues that OCPC has no parties, witnesses or evidence related to this action in Delaware. Kaizen avers that OCPC instituted this action in Delaware for the sole reason of accommodating the convenience of its lawyers, who practice in this state. Kaizen contends that the action actually emanates from Los Angeles, California, the location of its sales center. California is also the location of all events and evidence related to the litigation. (D.I.15, Ex. A)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 179996 (D.Del.)

(Cite as: 2003 WL 179996 (D.Del.))

Page 3

*3 6. OCPC contends its choice of forum should be afforded deference. (D.I.19) The Delaware forum was selected because Kaizen has committed patent infringement in this state, argues OCPC. Moreover, the evidence and witnesses necessary to defend against Kaizen's affirmative defenses are located in Sweden, the United Kingdom, Washington, D.C. and Illinois. Although all of these witnesses will have to travel for trial purposes, OCPC asserts that Delaware is a closer forum than California. Further, because there are three other cases involving the same patents pending before this court, judicial economy will be promoted by maintaining this action. (D.I.19, Ex. 1) The risk of inconsistent results will be reduced by allowing one judge to become proficient in the patent technology and the relevant facts.

OCPC also raises another issue related to Kaizen's business, or lack thereof, in Delaware. On Kaizen's internet website, the company describes itself as maintaining offices "world-wide," in addition to the California office. (D.I.19, Ex. 2) The Kaizen website does not accept orders for its products. However, the website does provide a link to an internet nutrition store which sells Kaizen products. According to the declaration of an OCPC attorney, she was able to place post-complaint orders for Kaizen products, including those alleged to infringe the patents-in-suit, from the linked nutrition store. (D.I.19, Ex. 3) The orders were made from a Delaware computer and she received the products in Delaware. The attorney states that she was able to buy a nationally distributed magazine at a Delaware bookstore that contained advertisements for Kaizen products. She was also able to purchase, in person, noninfringing Kaizen products from a Delaware store. She states that the owner of the store told her that he has received solicitations to sell the entire line of Kaizen products. OCPC plans to call the Delaware store owner as a third party witness.

In response, Kaizen urges the court to strike the declaration as it contains impermissible double hearsay. (D.I.20) However, even if it were considered, Kaizen contends it does not establish that Kaizen conducts business in Delaware or sells the accused products here. Moreover, the fact that

Kaizen's website describes its operations as "world-wide" still does not establish any business relationship with anyone in Delaware. Kaizen also argues that any problems with having third party witness testifying in California, can be solved by taking the depositions elsewhere.

Since the parties do not dispute that this action could have been initiated in the Central District of California, an examination of the private issues implicated by a transfer is warranted. The court finds the balance of private factors weighs in favor of transfer. The record reflects that neither litigant has ties to Delaware. Geographically, Delaware is inconvenient to everyone. All witnesses, documents and employees are located outside of this forum. Although Kaizen may describe itself as a world-wide operation, there has been nothing presented to corroborate this apparent embellishment.

*4 With regard to compulsory process problems, OCPC indicates that a Delaware store owner will be called as a trial witness. However, it has not established that this individual will be unwilling to testify outside of Delaware. Absent a demonstrable obstacle to obtaining personal jurisdiction over a third-party witness, the court declines to consider this as a problem.

Turning to the public interests, the court finds the practical considerations related to trial weigh in favor a transfer. As noted, the expense of trial in Delaware will weigh more heavily on Kaizen. Regardless of the forum, OCPC will incur travel expenses. A transfer to California would eliminate rather than merely shifting the travel expense of one party. *See Van Dusen v. Barrack,* 376 U.S. 612, 646 (1964).

The court is likewise confident that the Central District of California is well-equipped to decide the issues implicated by this case, regardless of the pendency of OCPC's other infringement actions. Further, considering Kaizen is a California corporation conducting business therein, that forum has a more particular interest in the litigation than Delaware. Accordingly, for the reasons stated, this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 179996 (D.Del.)

**(Cite as: 2003 WL 179996 (D.Del.))**

action is transferred to the Central District of California.

2003 WL 179996 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV00471  (Docket)
                        (Jun. 03, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.