REDACTED -- Public Version filed June 1, 2005

Westlaw.

Not Reported in A.2d

1984 WL 247023 (Del.Super.)

(Cite as: 1984 WL 247023 (Del.Super.))

Page 1

▷
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware, New Castle County.
RAMADA INNS, INC., Hotel Ramada of Nevada,
Adamar of New Jersey, Inc., and
Ramada Hotel Operating Company, Plaintiffs,
v.
James A. DRINKHALL, John Andrew and Dow
Jones & Company, Defendants.
Civ. A. No. 83C-AU-56.

Submitted: March 5, 1984.
Decided: May 17, 1984.

On Motion Of Defendants James A. Drinkhall And
John Andrew To Dismiss For Lack Of Personal
Jurisdiction.

Thomas C. Green (argued) of Sharp, Green &
Lankford, Washington, DC, of Counsel; F. Alton
Tybout of Tybout, Redfearn, Casarino & Pell,
Wilmington, for plaintiffs.

Susan E. Weiner (argued) and Gregory L. Diskant
of Patterson, Belknap, Webb & Tyler, New York
City, of Counsel; Edmund N. Carpenter, II and
James T. McKinstry of Richards, Layton & Finger,
Wilmington, for defendants.

TAYLOR, Judge.

*1 This is a libel suit against Dow Jones &
Company [corporate defendant], publisher of the
Wall Street Journal [Journal], and individual
defendants James A. Drinkhall [Drinkhall] and John
Andrew [Andrew]. The alleged libel occurred in
two articles which appeared in the Journal relating
to the conduct of plaintiffs' business activities. One

article was written by Drinkhall and the other
written by Andrew. Plaintiffs are four
corporations, the two corporations whose names
commence with the name "Ramada" are
incorporated in Delaware, one of the others is
incorporated in New Jersey and the other in
Nevada. The corporate defendant is incorporated
in Delaware. Neither individual defendant is a
Delaware resident. Defendant Drinkhall was and is
a citizen of California. Defendant Andrew was a
citizen of California until January, 1984.

Service was undertaken upon the individual
defendants in accordance with 10 *Del.C.* § 3104.
Service was made upon the corporate defendant by
serving its registered agent in Delaware. The
individual defendants have moved to dismiss for
lack of jurisdiction over the person.

I
10 *Del.C.* § 3104 in its present form was enacted
by 61 *Del.Laws* Ch. 471 which became effective
July 11, 1978. The alleged libelous publications
occurred August 17, 1981 and August 20, 1981, and
this suit was filed August 16, 1983. Therefore, the
current § 3104 determines the circumstances under
which personal jurisdiction can be exercised in this
State over the individual defendants in this suit.

Plaintiffs assert that jurisdiction exists over the
individual defendants by virtue of 10 *Del.C.* §
3104(c)(3) and § 3104(c)(4), which apply to a
non-resident who:
(3) Causes tortious injury in the State by an act or
omission in this State; [or]
(4) Causes tortious injury in the State or outside
of the State by an act or omission outside the
State if he regularly does or solicits business,
engages in any other persistent course of conduct
in the State or derives substantial revenue from
services, or things used or consumed in the State.

Plaintiffs have cited *Waters v. Deutz Corp.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                          Page 2

1984 WL 247023 (Del.Super.)

(Cite as: 1984 WL 247023 (Del.Super.))

Del.Super., 460 A.2d 1332 (1983) in support of the proposition that an expansive approach should be taken interpreting long arm statutes as coextensive with constitutional limitations. *Waters,* after noting that the Supreme Court had declared in *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980), that the language of 10 *Del.C.* § 3104 had its inception in § 1.03. of the *Uniform Interstate and International Procedure Act,* 13 *ULA,* p. 466 stated:

> Derived from the Illinois Long Arm Statute the Delaware statute may be similarly construed by recourse to the legislative and decisional law of Illinois.

That statement in *Waters* was made focusing on § 3104(c)(1) which gives long arm personal jurisdiction over a non-resident who:

> Transacts any business or performs any character of work or service in the State.

**\*2** Since that paragraph parallels the Illinois statute (except for the inclusion of the words "or performs any character of work or service"), the quotation from *Waters* was correct in the context of that case. However, *Waters* did not address the paragraphs which plaintiffs rely on here. Therefore, *Waters'* reliance on Illinois decisions does not make Illinois decisions controlling here. It appears from a search of its legislative history that the present Delaware long arm statute was drawn in substantial part from the Maryland long arm statute. Cf. *Annotated Code of Maryland* (1974), Courts and Judicial Proceedings, § 6-103 et seq. In turn, the Maryland long arm statute is reputed to have been "patterned after" the *Uniform Interstate Procedure Act.* Cf. 24 *A.L.R.3d* 532, 623. § 3104(c) tracks with some variation subsection (a) of the *Uniform Act.* Ibid p. 554.

The Illinois statute, *Ill.Stat.Ann.* c. 110, § 17(1), which plaintiffs refer to as the progenitor of 10 *Del.C.* § 3104, contains a paragraph which provides that a person who commits "a tortious act within this State," submits to jurisdiction in the State. Cf. *Gray v. American Radiator & Standard Sanitary Corp.,* Ill.Supr., 176 N.E.2d 761 (1961). That paragraph of the Illinois statute does not appear in § 3104. Conversely, paragraphs (3) and (4) of § 3104 do not appear in the Illinois statute. Therefore, the Delaware statute and the Illinois statute differ

materially in their treatment of the subject under consideration here.

It appears that of the various long arm statutes greater coverage is accorded to statutes which refer to tortious acts, tortious conduct or tortious injury with minimum qualifying language. Cf. 24 *A.L.R.3d* 532, 567-9.

Where qualifying language is used, the Court should not ignore that language out of a desire to afford maximum jurisdictional coverage.

II

Plaintiffs argue that 10 *Del.C.* § 3104(c)(3) only requires injury within Delaware in order to acquire long arm jurisdiction. The cases which plaintiffs cite in support of that proposition generally involve statutes which are patterned after the Illinois statute. These refer either to tortious act or tortious injury, but do not separately mention both injury and act as qualifying elements. Plaintiffs' argument rests on the proposition that all that is required under paragraph (3) is a "tortious act within the state"--as is the Illinois requirement. This argument overlooks the Delaware language, "tortious injury in the State by an act or omission within this State". Literally, Delaware law requires both a tortious act within the State and an act or omission within the State. The dual reference to "within the State" indicates that the draftsman intended that there be two separate events, each within the State. This is inconsistent with the rationale of the "tortious act" states which apply the reasoning that a tort which produces injury within the state is in itself an act within the state.

**\*3** The Supreme Court in *Eudaily v. Harmon,* supra, noted that 10 *Del.C.* § 3104 had its inception in § 1.03. of the *Uniform Interstate and International Procedure Act.* § 3104(c)(3) follows, with only slight modification, § 1.03.(1)(3). The Commissioners' Comment which follows § 1.03. of the *Uniform Act,* [FN1] 13 *ULA* 466, states (at page 468):

> Section 1.03(1)(3) may have a narrower range of application than statutes which base jurisdiction upon the "commission of a tortious act" within

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 3

1984 WL 247023 (Del.Super.)

(Cite as: 1984 WL 247023 (Del.Super.))

the state (see, e.g., Ill.Stat.Ann. c. 110, § 17(1)(b); Mc.Rev.Stat.Ann. c. 112, § 21(I)(B); N.Y.C.P.L.R. § 302(a)(2) (effective Sept. 1, 1963); N.C.Gen.Stat. §§ 55-145(4), or upon the commission of a tort "in whole or in part" in the state. See, e.g., Minn.Stat.Ann. § 303.13(3); Vt.Stat.Ann. tit. 12, § 855. Some of these statutes have been interpreted to cover acts or omissions outside the state.

This Comment makes it clear that where more specific language than that of the Illinois statute was used it was intended to be applied literally and not to be given the broad brush scope given the Illinois type statute. In the light of this background cases which have applied statutes patterned after the Illinois statute such as the following cases are not of assistance in interpreting paragraph (3): Cf. *Thiry v. Atlantic Monthly Company,* Wash.Supr., 445 P.2d 1012 (1968); *Rebozo v. Washington Post Company,* 5 Cir., 515 F.2d 1288 (1975); *Ammon v. Kaplow,* D.Kans., 468 FS 1304 (1979); *Buckley v. New York Post Corp.,* 2 Cir., 373 F.2d 175 (1967); *Manqual v. General Battery Corp.,* 1 Cir., 710 F.2d 15 (1983); *Novel v. Garrison,* N.D.Ill., 294 F.Supp. 825 (1969); *Process Church of the Final Judgment v. Sanders,* N.D.Ill., 338 F.Supp. 1396 (1972). Similarly, cases involving statutes which extend jurisdiction to cover "torts, in whole or in part, in the state involving residents of the state" are distinguishable. *Edwards v. Associated Press,* 5 Cir., 512 F.2d 258 (1975); *McBride v. Owens,* S.D.Tex., 454 FS 731 (1978); *Brown v. Flowers Ind., Inc.,* 5 Cir., 688 F.2d 328 (1982).

Turning to cases which have discussed language similar to that in § 3104(c)(3), the scope of that portion of the Maryland long arm statute when applied to a suit for libel was considered in *Zinz v. Evans and Mitchell Industries,* Md.Spec.App., 324 A.2d 140 (1974). The Court stated:

The appellant relies primarily on subsection (a)(3). That subsection consists of two distinct elements. There must be 1) "a tortious injury in this State" which is caused by 2) "an act or omission in this State." The appellees concede that the "tortious injury," if any, took place in Maryland. They strenuously assert, however, that the "act or omission," causing the tortious injury

did not occur in Maryland. The causal act is separated from the resulting injury. Both elements must be present before personal jurisdiction will be inferred. We find persuasive the case of Margoles v. Johns, 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973). In that case, an allegedly defamatory phone call was placed from Wisconsin to Washington, D.C. The injury occurred in Washington. The Court of Appeals said, at 1217-1218:

*4 The "act," of course, is the act of the alleged tortfeasor--here that act, uttering defamatory statements, occurred in Wisconsin. Nothing can change that fact. The additional facts that other third party acts were necessary to consummate the tort, or that the injury itself took place within the District, cannot under our reading of the Uniform Act grant jurisdiction that is otherwise lacking.

Unless we wish to delve into a magical mystery tour of "projecting presences," we must find that no jurisdiction can be afforded by virtue of section (a)(3).

The District of Columbia's "Long Arm" Statute was "purposely" similar to Maryland's and the law there announced was "completely in accord with the currently prevailing case law in Maryland." 483 F.2d at 1220.

*Zinz* was followed in *Craig v. General Finance Corp. of Illinois,* D.Md., 504 F.Supp. 1033 (1980). *St. Clair v. Richter,* W.D.Va., 250 F.Supp., 148 (1966), applying the Virginia statute which contained provisions similar to § 3104(c)(3) & (4), reached the same result as *Zinz.*

On the other hand, some statutes containing language similar to paragraphs (3) and (4) have given that language an expanded meaning. *Murphy v. Erwin-Wasey, Inc.,* 1 Cir., 460 F.2d 661 (1972) held that under the Massachusetts statute sending a false statement into Massachusetts with the intent that it should be relied upon to the injury of a resident of the state was a qualifying act, with a footnote observation that the Court was not persuaded that the word "act" is strictly limited to physical acts. See also, *Escude Cruz v. Ortho Pharmaceutical Corp.,* 1 Cir., 619 F.2d 902 (1980). Similarly, without analyzing the statutory wording, *Carter v. Houston Chronicle Pub. Co.,* W.D.Okl.,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                        Page 4

1984 WL 247023 (Del.Super.)

**(Cite as: 1984 WL 247023 (Del.Super.))**

514 F.Supp. 12 (1980) found that language in the Oklahoma statute similar to that of paragraphs (3) and (4) of § 3104(c) extends the jurisdictional long arm to the outer limits of the constitution. In *Anselmi v. Denver Post*, 10th Cir., 552 F.2d 316 (1977) the provision comparable to paragraph (3) of § 3104(c) was interpreted to require only a tortious injury in the state which requirement was satisfied by the sending of defamatory material into the state. It is noted the United States District Court in Wyoming reached a contrary conclusion involving a similar statute in *Whitaker v. Denver Post, Inc.*, D.Wyo., 401 F.Supp. 60 (1975).

10 *Del.C.* § 3104(c)(3) has been the subject of decision in the United States District Court in Delaware in *Moore v. Little Giant Indus., Inc.*, D.Del., 513 FS 1043 (1981), aff'd. In rejecting a contention that a tortious injury occurring in Delaware satisfied the requirement that an act must occur in Delaware, the District Court stated:

Plaintiffs' suggestion that the "tortious act" should be deemed to have occurred where the injury took place would eviscerate the distinction between subsections (c)(3) and (c)(4) of the statute, and must therefore be rejected under generally accepted principles of statutory construction. See Mergenthaler v. State, 239 A.2d 635 (Del.1968).

*5 In the light of the above considerations, I conclude that the specific language used in paragraph (3) of § 3104(c), 10 *Del.C.*, requires that both a tortious injury and an act (or omission) causing the injury must occur in Delaware and that the causative act (or omission) in Delaware be distinct from the injury. In view of the evolutionary history of long arm statutes and the well established legislative and judicial precedents which existed prior to enactment of the Delaware statute, including the precedents in the neighboring state of Maryland from which this provision came, it would be inappropriate to ignore the statutory wording in favor of a broad brush rationalization that the paragraph was intended to utilize the due process standard to the utmost.

Turning to the limited facts which plaintiffs have presented in this case which might shed light upon

the individual defendants' connection with Delaware, the articles in question were written outside Delaware for their employer, the corporate defendant, and were edited and published by and presumably distributed by the employer. What control, if any, the individual defendants had over the publication and distribution has not been stated, and it must be assumed that they had none. Upon this state of facts that individual defendants were not present in Delaware nor anyone acting on their behalf, I am unable to attribute a vicarious or fictional presence in Delaware which could satisfy the requirement that an act or omission must have occurred in Delaware. Accordingly, I find that under the facts presented 10 *Del.C.* § 3104(c)(3) does not provide support for personal jurisdiction over defendants Drinkhall and Andrew.

III

The second paragraph of § 3104(c) which plaintiff relies upon to support Delaware jurisdiction over the individual defendants is paragraph (4). This extends personal jurisdiction over (1) a non-resident who causes tortious injury, (2) where the injury occurred in or outside of Delaware, (3) and was caused by an act or omission outside Delaware, if the non-resident either (a) regularly does or solicits business, or (b) engages in any other persistent course of conduct in Delaware, or (c) derives substantial revenue from services or things used or consumed in Delaware. First of all, in applying this paragraph I take the reasonable literal analytical approach and not merely the broad brush approach.

The Commissioners' Comment pertaining to Section 1.03.(a)(4) of the *Uniform Act*, 13 *ULA* 466, [FN2] which is the same as paragraph (4) of § 3104(c) (except that the Delaware paragraph also covers tortious injury outside of Delaware) states (at page 468):

Section 1.03(a)(4) authorizes the exercise of jurisdiction when the tortious act or omission takes place without the state but the injury occurs within the state and there is some other reasonable connection between the state and the defendant.

* * *

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

1984 WL 247023 (Del.Super.)

**(Cite as: 1984 WL 247023 (Del.Super.))**

... the regular solicitation of business or the persistent course of conduct required by section 1.03(a)(4) need have no relationship to the act or failure to act that caused the injury. No distinctions are drawn between types of tort actions.

\* \* \*

\*6 ... It is not necessary that this activity amount to the doing of business.

This is an alleged tortious injury in that as alleged it is injury resulting from a tort; cf. *Magid v. Marcal Paper Mills, Inc.,* D.Del., 517 F.Supp. 1125 (1981); the alleged tortious injury occurred in Delaware, and it has been determined above the tortious injury was caused by act of the individual defendant outside of Delaware.

With respect to the alternative conditions which must be met in order to qualify under paragraph (4), each individual defendant has submitted an affidavit indicating isolation from Delaware in various respects, including lack of personal presence in Delaware. Plaintiffs have not presented countering facts. Two of the three alternatives relate not to physical presence but to a business or financial relationship to Delaware and do not call for consideration here. The remaining alternative refers to "persistent course of conduct" in Delaware.

With respect to the "persistent course of conduct" alternative, it will be noted that unlike other portions of paragraphs (3) and (4) it makes no reference to an "act" in Delaware. The limitations implicit in § 3104(c)(4) have not been so clearly defined by decision nor so sharply distinguished from the Illinois type reasoning as have been those applying to § 3104(c)(3).

If long arm jurisdiction is to reach individual defendants, plaintiffs must present detailed facts concerning the nature and extent of activities of these defendants conducted within and directed toward this state to assist in applying not only the statutory standard but also the due process standard. Cf. *Waters v. Deutz Corp.,* supra; *Fischer v. Hilton,* D.Del., 549 F.Supp. 389 (1982); *Plumb v. Cottle,*

D.Del., 492 F.Supp. 1330 (1980); *Keeton v. Hustler Magazine,* --- U.S. ----, --- S.Ct. ----, ---L.Ed.2d ----, (Slip Opinion, March 20, 1984); *Calder v. Jones,* --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ---- (Slip Opinion, March 20, 1984); *Thiry v. Atlantic Monthly Company,* supra.

Plaintiffs will be afforded a reasonable time to present facts bearing upon individual defendants' qualification under § 3104(c)(4). Plaintiffs' attorney shall submit a proposal giving course of action and time requirements.

> FN1. (3) causing tortious injury by an act or omission in this state;

> FN2. § 1.03.(a)(4) reads:
> (4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; [or]

1984 WL 247023 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**REDACTED -- Public Version filed June 1, 2005**

Westlaw.

Not Reported in A.2d

1991 WL 129174 (Del.Ch.)

(Cite as: 1991 WL 129174 (Del.Ch.))

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle
County.
RED SAIL EASTER LIMITED PARTNERS, L.P.,
a Delaware limited partnership, Delphi
Easter Partners Limited Partnership, a New York
limited partnership,
Plaintiffs,
v.
RADIO CITY MUSIC HALL PRODUCTIONS,
INC., a Delaware corporation, Rockefeller
Group, Inc., a New York corporation, Spectacular
Partners, Inc., a Delaware
corporation, Easter Show Limited Partnership, a
Delaware limited partnership,
Defendants.
**Civ. A. No. 12036.**

Submitted: June 12, 1991.
Decided: July 10, 1991.
William Prickett, and Ronald A. Brown, Jr. of
Prickett, Jones, Elliott, Kristol & Schnee,
Wilmington, for plaintiffs.

William D. Johnston, and Melanie K. Sharp of
Young, Conaway, Stargatt & Taylor, Wilmington (
Ronald S. Rauchberg, Esquire, and Michael D.
Povman of Proskauer Rose Goetz & Mendelsohn,
New York City, of counsel, for defendants Radio
City Music Hall Productions, Inc., Rockefeller
Group, Inc. and Spectacular Partners, Inc.

Joseph A. Rosenthal of Morris, Rosenthal, Monhait
& Gross, P.A., Wilmington, for Easter Show
Limited Partnership.

*MEMORANDUM OPINION*

ALLEN, Chancellor.

*1 This is an action by the limited partners of a
Delaware limited partnership against the
partnership, its corporate general partner, and the
corporate parent and grandparent of the general
partner. The allegation is that defendants have
breached duties arising out of the limited
partnership agreement and certain ancillary
agreements between the limited partners and the
general partner and its parent. Pending is a motion
of the corporate grandparent--Rockefeller Group,
Inc.--to dismiss the complaint for lack of personal
jurisdiction.

Plaintiffs, Red Sail Limited Partners, L.P., and
Delphi Easter Partners Limited Partnership, are the
only limited partners of Easter Show Limited
Partnership. The principal defendants are: the
general partner, Spectacular Partners, Inc.; its sole
stockholder, Radio City Music Hall Productions,
Inc.; and Rockefeller Group, Inc., the sole
stockholder of Radio City. Easter Show is a
Delaware limited partnership, and Spectacular
Partners and Radio City are both Delaware
corporations. Rockefeller Group is a New York
corporation.

Rockefeller Group has moved for dismissal under
Rule 12(b)(2) and (5). It claims that no facts exist
that would justify the assertion of personal
jurisdiction over it by this court because it was not a
party to the partnership agreement or any of the
other agreements at issue; it does no business in
Delaware; and it has done no act in Delaware
related to this transaction. It affirms that it did
cause the incorporation of Radio City Music Hall
Products, Inc., as a Delaware corporation (as well
as certain other subsidiaries), and it acknowledges
that that required a filing in Delaware, but it asserts
that that act was years ago and has no relationship
whatsoever with the claims that plaintiffs would

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 2

1991 WL 129174 (Del.Ch.)

**(Cite as: 1991 WL 129174 (Del.Ch.))**

require it now to defend in this jurisdiction. This sole contact, unrelated to the facts alleged to constitute a wrong, is, it says, insufficient under the *International Shoe* line of cases [FN1] to support this court's exercise of personal jurisdiction over it.

Plaintiffs respond that, in *Sternberg v. O'Neil,* Del.Supr., 550 A.2d 1105 (1988), the Delaware Supreme Court interpreted *International Shoe* and its progeny to permit the courts of this state to exercise personal jurisdiction over the parent of a wholly-owned subsidiary incorporated in Delaware on any cause of action arising out of the operation of that subsidiary. [FN2]

* * *

Rockefeller Group's principal place of business is New York City. Its principal activity is developing, owning, and operating real estate. The record contains no evidence that Rockefeller Group owns real estate in Delaware or that it otherwise conducts business in Delaware. The only acts in Delaware that Rockefeller Group has done involve filings necessary to form and to merge several wholly-owned subsidiaries. Neither the formation nor the merger of any of those corporations constitute any part of the facts alleged in the complaint as a wrong. The record establishes that, before April of 1984, Rockefeller Group created four Delaware subsidiaries and caused two of those subsidiaries to merge into one of the other two. One of these two remaining Delaware subsidiaries is Radio City, the other is not a party to this litigation or otherwise associated with the agreements at issue.

*2 The record also contains evidence of activity in Delaware by subsidiaries of Rockefeller Group. In April of 1984 a subsidiary of Rockefeller Group registered to do business in Delaware. This subsidiary, however, is in no way involved in this case.

* * *

The question whether to exercise personal jurisdiction over a non-resident defendant involves a two part inquiry: (1) may the defendant constitutionally be required to litigate the plaintiff's

claim in this jurisdiction given the defendant's conduct, its relationship with the forum and the claims sought to be adjudicated; and (2) does the Delaware statutory law authorize exercise of the constitutional power (if it exists in the circumstances) to compel such adjudication in the courts of this state.

I need not express an opinion on the constitutionality of requiring one in the position of Rockefeller Group to defend litigation of this sort in Delaware since I am firmly of the view that the language of the statutory enactment plaintiffs invoke to justify service of process--Section 3104 of Title 10 of the Delaware Code--cannot be stretched to cover this case without breaking the necessary connection between statutory words and common usage of the English language. *See Trans-Americas Airlines, Inc. v. Kenton,* Del.Supr., 491 A.2d 1139, 1142-43 (1985).

Plaintiffs invoke three subsections of Section 3104(c) as authorizing service of process on Rockefeller Group in this case. The pertinent statutory language is as follows:

(c) As to a cause of action brought by any person *arising from any of the acts enumerated in this section,* a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

* * *

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. (emphasis added)

Application of these words to the acknowledged

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 3

1991 WL 129174 (Del.Ch.)

**(Cite as: 1991 WL 129174 (Del.Ch.))**

facts of Rockefeller Group's involvement with the alleged wrongs does not require great subtlety or the recitation of legal precedent. It is rather straight-forward.

In organizing subsidiary corporations in Delaware, Rockefeller Group has transacted business in this state (subsection (c)(1)), but the claims sought to be litigated here--breach of contract and breach of alleged fiduciary duties, or wrongful participation or conspiracy in either--in no sense relates to those activities in Delaware. *Compare Papendick v. Bosch,* Del.Supr., 410 A.2d 148 (1979), *cert. denied,* 446 U.S. 909 (1980). Section 3104 expressly requires that where substituted service is employed under its terms, the wrong alleged must arise from the "acts enumerated." As the wrongs here alleged do not arise from the business that Rockefeller Group transacted in Delaware, subsection (c)(1) of Section 3104 does not authorize service of process upon it in this case.

**\*3** Subsection (c)(3) authorizes service of process when there is a tortious injury in the state by an act or omission in this state. Since the only act in Delaware that Rockefeller Group can be said to have done is to cause the formation and merger of its subsidiaries, and since those acts themselves are no part of any wrong (in this state or outside of it), this subsection offers plaintiffs no ground to require Rockefeller Group to appear in this action. [FN3]

These two sub-sections address specific personal jurisdiction--that is, jurisdiction to adjudicate a specific claim that itself is associated in some way with the forum jurisdiction. Subsection (c)(4) addresses a situation in which a defendant is generally affiliated with the forum jurisdiction. That is, subsection (c)(4) will apply when a defendant has had contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim even when that claim arose outside of this state and causes injury outside of this state. *See Sternberg v. O'Neil,* 550 A.2d at 1117; *Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1302-04 (D.Del.1990) . Plainly, the minimal connection that Rockefeller

Group has had with this state would be insufficient to predicate service of process on Section 3104(c)(4). There is here no "persistent course of conduct in the State" nor is there any suggestion that Rockefeller Group "derives substantial revenue from services, or things used or consumed in the State." Therefore, subsection (c)(4) is unavailing to plaintiffs.

I conclude therefore that Section 3104 does not authorize this court to exercise jurisdiction over Rockefeller Group. This conclusion is not inconsistent with the holding in *Sternberg v. O'Neil,* Del.Supr., 550 A.2d 1105 (1988). That case addressed the constitutional issue that questions of personal jurisdiction over non-resident defendants inevitably raises. It did not concern the separate question whether Delaware law authorized service of process, since the defendant there had appointed an agent and so was "present" in the state. *Id.* at 1109 (citing *Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co.,* 243 U.S. 93, 95 (1917). [FN4]

In *Sternberg,* the Delaware Supreme Court held that it was consistent with traditional notions of fair play and substantial justice--that is, it was constitutional--to require a foreign corporation that had long owned all of the stock of a Delaware corporation to appear and defend a double derivative suit charging the directors of the Delaware company and its parent with breach of fiduciary duty.

Plaintiffs argue that, after *Sternberg,* this court must be authorized to exercise jurisdiction under Section 3104 over an out-of-state parent of a Delaware corporation because Section 3104 has been "construed to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B, S.p.A. v. Bowe Co., Inc.,* Del.Supr., 513 A.2d 764, 768 (1988). In my opinion, the Supreme Court did not intend in *LaNuova* to direct the trial court to ignore the specific words of Section 3104 and to henceforth analyze all questions arising under Section 3104 only in the broad terms of fundamental fairness that guide determination of the constitutional question.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                     Page 4

1991 WL 129174 (Del.Ch.)

**(Cite as: 1991 WL 129174 (Del.Ch.))**

The Supreme Court commands that this statute be given a liberal construction so that its purpose is achieved, but it has not directed that the application of statutory words to the facts in hand be slighted.

**\*4** Nor on the current record can the activities of Rockefeller Group's subsidiaries in Delaware be attributed to Rockefeller Group. [FN5] Courts in Delaware will ignore the separate corporate existence of a subsidiary and attribute its activities in Delaware to the parent only if the subsidiary is the alter ego or a mere instrumentality of the parent, or if the subsidiary acts as the agent of the parent. *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* Del.Supr., 154 A.2d 684 (1959); *Sears, Roebuck & Co.,* 744 F.Supp. at 1304; *Mobile Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 265-72 (D.Del.1989). The record contains no evidence that either basis for imputing the acts of the subsidiary to the parent apply to Radio City or to the Rockefeller Group subsidiary that registered to do business here.

\* \* \*

Finally, plaintiffs assert personal jurisdiction over Rockefeller Group based on a conspiracy theory of jurisdiction. It cites *Istituto Bancario Italiano SpA v. Hunter Eng. Co., Inc.,* Del.Supr., 449 A.2d 210 (1982), but that case too dealt with the constitutional fairness issue, not with statutory construction. In all events, the claim is that Rockefeller Group conspired with its wholly owned subsidiary to breach the partnership agreement and the ancillary agreements, and that the formation of Spectacular Partners and Easter Show were acts in Delaware in furtherance of that conspiracy.

A theory of personal jurisdiction based upon an alleged conspiracy between a foreign corporation and its wholly owned Delaware subsidiary is very close to being merely another way to assert that a controlling shareholder may always be sued in Delaware on any claim made against the subsidiary. A controlling shareholder does by definition control (or have the power to control) the acts of its subsidiary. Thus, an attempt to apply a conspiracy theory to parent-subsidiary corporations in order to extend the reach of Section 3104 raises particular

concerns. I need not address those concerns, however, because, assuming that Rockefeller Group may be subjected to the compulsion of legal process under Section 3104 if any party with whom it is in conspiracy could be served under Section 3104, still plaintiffs have failed to show that any of the defendants could be served under the terms of that statute. In other words, if the conspiracy theory means Rockefeller Group may be sued in any jurisdiction in which an act in furtherance of the conspiracy occurred, plaintiffs have failed to make a *prima facie* case that the only Delaware acts-- filing of the Spectacular Partners incorporation document and of the limited partnership documents--were part of a conspiracy to breach duties created by the funding of the limited partnership obligations. It is not enough to sustain service of process under Section 3104 when challenged on a motion under Rule 12(b)(2) or (5) that plaintiffs might imagine that an act in Delaware might possibly be related to the wrong alleged and that a non-resident defendant might possibly have participated in some way in that action ("conspired"). Plaintiffs' obligation is to come forward with some evidentiary support for such speculation. *See Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.,* Del.Ch., C.A. No. 11514, Allen, C. (Feb. 13, 1991). Here they have not done so.

**\*5** The motion to dismiss is therefore GRANTED.

> FN1. *See, e.g., International Shoe Co. v. Washington,* 326 U.S. 310 (1945); *Shaffer v. Heitner,* 433 U.S. 186 (1977); *Burger King v. Rudzewicz,* 471 U.S. 462 (1985); *Burnham v. Superior Court of California,* 110 S.Ct. 2105 (1991).

> FN2. This principle is breath-taking in scope. It would apply for example to support jurisdiction over a New York corporation that owned a Delaware subsidiary whose employee was involved, during the course of his employment, in an intersection collision in Los Angeles.

> FN3. In so concluding I need not express

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

1991 WL 129174 (Del.Ch.)

**(Cite as: 1991 WL 129174 (Del.Ch.))**

any view on the question whether a financial impact on a Delaware corporation (arising for example from the misappropriation of trade secrets) is "tortious injury in the State" within the meaning of this section.

FN4. The present case is also different in this respect from *In re USACafes, L.P. Lit.,* Del.Ch., Cons. C.A. 11146, Allen, C. (June 7, 1991), where the directors of a Delaware corporation were subject to service of process under the director's longarm statute, 10 *Del.C.* § 3114.

FN5. Indeed, the record does not disclose any such activities in Delaware, except the filing by Radio City of the incorporation documents of Spectacular Partners and the filing by Spectacular Partners of the limited partnership documents. Thus, while those Rockefeller Group subsidiaries are plainly "present" in Delaware by reason of their incorporation, they do not do business generally in this state for purposes of Section 3104(c).

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**REDACTED -- Public Version filed June 1, 2005**

Westlaw.

Not Reported in F.Supp.2d

2004 WL 722252 (D.Del.), 9 Wage & Hour Cas.2d (BNA) 959

(Cite as: 2004 WL 722252 (D.Del.))

c

Motions, Pleadings and Filings

United States District Court,
D. Delaware.
Larisa STEIN, Plaintiff,
v.
CHEMTEX INTERNATIONAL, INC., Defendant.
No. Civ. 04-001-SLR.

March 31, 2004.

Matthew F. Boyer, Timothy M. Holly, Connolly
Bove Lodge & Hutz LLP, Wilmington, Delaware;
Brian W. Raum, Gucciardo & Raum, P.C., New
York, New York, for Plaintiff.

Donald E. Reid, Morris, Nichols, Arsht & Tunnell;
William Joseph Austin, Jr., Ward and Smith, P.A.,
New Bern, North Carolina, for Defendant.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On January 5, 2004, Larisa Stein ("plaintiff")
filed suit against her former employer, Chemtex
International, Inc. ("defendant"), alleging sex-based
employment discrimination in violation of Title VII
of the Civil Rights Act of 1964, as amended, 42
U.S.C. §§ 2000e et seq, and the Fair Labor
Standards Act of 1938, as amended, 29 U.S.C. §
206(d) ("FLSA"). [FN1] (D.I.1) Plaintiff claims that
defendant engaged in unlawful sex-based
discrimination through its employees, resulting in a
hostile work environment, a failure to promote,
disparate wages, and a loss of compensation. (Id .)
Plaintiff also claims that defendant retaliated against
her for making complaints of discrimination by
terminating her employment. (Id.) Plaintiff further

claims that defendant breached a relocation contract
whereby defendant promised to pay her certain
monetary benefits if her employment were
terminated after she relocated from New York to
North Carolina within three years of the date her
eligibility for temporary living allowances ended. (
Id.)

FN1. On October 6, 2003, plaintiff
received notification from the Equal
Employment Opportunity Commission that
the Commission was unable to establish
Title VI violations pursuant to its
investigation. (D.I.8, ex. A) "If a charge
filed with the Commission ... is dismissed
by the Commission, ... the Commission ...
shall so notify the person aggrieved and
within ninety days after the giving of such
notice a civil action may be brought
against the respondent named in the charge
(A) by the person claiming to be
aggrieved." 28 U.S.C. § 2000e-5(f)(1).
Pursuant to this section, plaintiff filed the
instant civil action ninety-one days after
receiving the Commission's notification.
This filing was timely, albeit one day
beyond the statutory deadline date,
because the ninetieth day fell on a Sunday.

Plaintiff resides in Wilmington, North Carolina.
Defendant is incorporated under the laws of the
State of Delaware and has its principal place of
business in Wilmington, North Carolina. The court
has jurisdiction over the suit pursuant to 28 U.S.C. §
1331 and supplemental jurisdiction pursuant to 28
U.S.C. § 1367.

Presently before the court is defendant's motion to
dismiss for improper venue. (D.I.3) For the reasons
that follow, the court grants this motion in part and
orders this action transferred to the United States
District Court for the Eastern District of North
Carolina.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

2004 WL 722252 (D.Del.), 9 Wage & Hour Cas.2d (BNA) 959

(Cite as: 2004 WL 722252 (D.Del.))

### III. STANDARD OF REVIEW

A court may dismiss a lawsuit for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). However, the Federal Rules of Civil Procedure do not contain any specific venue provisions or requirements. A court, therefore, must determine whether venue is proper in accordance with the appropriate statutes when deciding a motion to dismiss for improper venue. *Albright v. Gore,* 2002 WL 1765340, *3 (D.Del.2002) (citations omitted). The moving party has the burden of proving that venue is improper. *Id.* (citing *Myers v. American Dental Ass'n,* 695 F.2d 716, 724 (3d Cir.1982)).

### IV. DISCUSSION

Plaintiff asserts causes of action under Title VII, the FLSA, and contract law. Plaintiff alleges that venue is proper in the District of Delaware under the general venue provision, 28 U.S.C. § 1391. Specifically, plaintiff contends that "[v]enue is proper pursuant to 28 U.S.C. § 1391(a) and (c) because [d]efendant is a Delaware [c]orporation subject [to] the personal jurisdiction of this [c]ourt ." (D.I. 1 at ¶ 6) In response, defendant argues that venue in a Title VII action is subject to the specific venue provisions of 42 U .S.C. § 2000e-5(f)(3). Under this provision, defendant claims that venue is only proper in the State of North Carolina.

The court agrees with defendant. Venue generally must be established for each separate claim in a complaint. *See Kravitz v. Inst. for Int'l Research,* 1993 WL 453457, *3 (E.D.Pa.1993) (citations omitted). Venue for a Title VII claim is governed by § 2000e-5(f)(3). Section 2000e-5(f)(3) states that a Title VII action may be brought in:
    **\*2** [1] any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial

district in which the respondent has his principal office.
Courts have determined that this language sets forth four judicial districts where an employment discrimination action may be brought:
    (1) where "the unlawful employment practice is alleged to have been committed;"
    (2) where "the plaintiff would have worked but for the alleged unlawful employment practice;"
    (3) where "the employment records relevant to such practice are maintained and administered;" and
    (4) where the employer "has his principal office" if he cannot be found within the district where "the plaintiff would have worked but for the alleged unlawful employment practice."
*Paige v. Solo,* 2002 WL 1822418, * 1 (D.Del.2002) (citations omitted) In so limiting venue, the District of Columbia Circuit noted that "the intent of Congress to limit venue to the judicial district concerned with the alleged discrimination seems clear." *Stebbins v. State Farm Mut. Auto Ins., Co.,* 413 F.2d 1100, 1102 (D.C.Cir.1969).

Unlike Title VII, the FLSA has no special venue provision. It is governed by the general venue statute, 28 U.S.C. § 1391. Contract law claims in federal court are likewise governed by 28 U.S.C. § 1391. Section 1391(b) permits venue in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Section 1391(c), in turn, states that a corporate defendant, as in the suit at bar, shall be deemed to reside for purposes of venue in any judicial district in which it is subject to personal jurisdiction. Taken together, a FLSA action against a corporate defendant, therefore, may be brought in the judicial district: (1) where the corporate defendant is subject to personal jurisdiction; or (2) where a "substantial part of the events or omissions giving rise to the claim occurred."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 3

2004 WL 722252 (D.Del.), 9 Wage & Hour Cas.2d (BNA) 959

**(Cite as: 2004 WL 722252 (D.Del.))**

In comparing the venue alternatives available under § 1391 with those available under § 2000e-5(f)(3), the court notes that § 28 U.S .C. § 1391 does not provide the same options as are available under § 2000e-5(f)(3). The court also recognizes that Title VII venue provisions are exclusive for Title VII cases. *See Thurmon v. Martin Marietta Data Systems,* 596 F.Supp. 367, 368 (M.D.Pa.1984). Consequently, the court will focus its discussion on whether venue is appropriate for all claims pursuant to § 2000e-5(f)(3).

**\*3** After considering the four judicial district options enumerated in § 2000e-5(f)(3), the court finds that no discrimination occurred in the State of Delaware and that venue in this district is improper. First, the alleged unlawful employment practice occurred in Wilmington, North Carolina. Second, plaintiff's employment records are located in Wilmington, North Carolina. Third, plaintiff would have worked in Wilmington, North Carolina but for the alleged retaliation. Fourth, defendant's principal place of business is located in Wilmington, North Carolina. Accordingly, the court concludes that venue is proper in the judicial district which encompasses Wilmington, North Carolina (i.e., the United States District Court for the Eastern District of North Carolina). [FN2]

> FN2. In her answering brief, plaintiff appears to agree with defendant and concedes that venue is proper in the United States District Court for the Eastern District of North Carolina. (*See* D.I. 7)

Having determined that venue is not proper in the District of Delaware, the court must decide whether to dismiss or to transfer plaintiff's case. Where venue has been incorrectly chosen, a district court may either dismiss the case or transfer it to the appropriate district "in the interests of justice." Specifically, 28 U.S.C. § 1406(a) states:
  The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
The court finds that the interests of justice favor

transferring this case. If the court were to outright dismiss the instant action, plaintiff may suffer a complete loss of her rights because the statute of limitations has run since plaintiff filed her suit in this district. That is, because more than ninety days has passed between the date when plaintiff received her notification letter from the Equal Employment Opportunity Commission and the date that defendant filed the instant motion to dismiss, plaintiff is unable to file a new claim based upon sex-based employment discrimination. This court previously has recognized that it should transfer, rather than dismiss a case, where "[t]he statute of limitations has run, and the plaintiffs will be unnecessarily prejudiced in pursuing their claim." *Albright,* 2002 WL 1765340 at \* 6. The court, therefore, concludes that plaintiff's case should be transferred to the United States District Court for the Eastern District of North Carolina where the suit originally should have been filed.

V. CONCLUSION

For the reasons stated, the court grants defendant's motion in part and orders that this case be transferred to the United States District Court for the Eastern District of North Carolina. An order shall issue.

ORDER
At Wilmington, this 31st day of March, 2004, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that defendant's motion to dismiss for improper venue (D.I.3) is granted in part.

IT IS FURTHER ORDERED that plaintiff's case be transferred to the United States District Court for the Eastern District of North Carolina. The Clerk of Court is directed to transfer the case as noted.

2004 WL 722252 (D.Del.), 9 Wage & Hour Cas.2d (BNA) 959

**Motions, Pleadings and Filings (Back to top)**

• 1:04CV00001 (Docket)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

2004 WL 722252 (D.Del.), 9 Wage & Hour Cas.2d (BNA) 959

**(Cite as: 2004 WL 722252 (D.Del.))**

(Jan. 05, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**REDACTED -- Public Version filed June 1, 2005**

1991 U.S. Dist. LEXIS 1432, *

LEXSEE 1991 US DIST LEXIS 1432

WILLIAM D. WALTERS, SR., and IMPERIAL OIL OF NORTH DAKOTA,
INC., Plaintiffs, v. J.W. BEAVERS, JR., as Trustee of the WILLIAM HERBERT
HUNT TRUST ESTATE, HUNT OIL COMPANY, PROSPER ENERGY
CORPORATION, PETRO-HUNT CORPORATION, HUNT ENERGY
CORPORATION, WILLIAM HERBERT HUNT, MARVIN L. KAISER and
RUSSELL L. KIKER, JR., Defendants

Civil Action No. 89-696-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1991 U.S. Dist. LEXIS 1432*

February 6, 1991, Filed

CASE SUMMARY:

PROCEDURAL POSTURE: In a suit by plaintiffs, a citizen of Montana and a North Dakota company, that alleged that defendants, Delaware corporations and citizens of Texas and North Dakota, violated the Racketeer Influenced and Corrupt Organizations Act (RICO), defendants filed motions to transfer the case to another district court, pursuant to *28 U.S.C.S. § 1404*(a), 1406. Defendants also filed motions to dismiss.

OVERVIEW: The parties' dispute concerned an allegedly an ongoing scheme between defendants that involved the unitization of an oil producing region in North Dakota, plaintiffs' purchase of leases that defendants abandoned, and defendants' efforts, through alleged acts of coercion, harassment, and slander to regain control of the drilling and mineral rights in the region. In granting defendants' § 1404(a) motion to transfer, the court observed that all of the oil leases and mineral rights related to property located in North Dakota, most of the alleged illegal acts by defendants occurred in North Dakota, and that there appeared to be no connection to Delaware, with the exception of incorporation of some of the corporate defendants. The court considered the convenience of the parties and the witnesses and the interests of justice and concluded that all factors favored transfer. The court rejected the "crux"

of plaintiffs' argument against transfer, that they would be unable to receive a fair trial in North Dakota because of the popularity of some of the people who would be implicated by the suit, holding that the argument failed to acknowledge the integrity of the federal judicial system.

OUTCOME: The court granted defendants' motion to transfer plaintiffs' RICO action to the district court in North Dakota. The court did not address the merits of defendants' motion to dismiss.

CORE TERMS: venue, turf, lease, transferring, oil, convenience, mineral, lawsuit, transferred, join, mineral rights, civil action, drilling, resident, weigh, deference, unitization, transferee, transacts, resides, prong, deep, subject matter jurisdiction, motions to dismiss, choice of forum, giving rise, convinced, weighing, closest, viable

LexisNexis(R) Headnotes

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] The requirements of *28 U.S.C.S. § 1404* are more stringent than those under *28 U.S.C.S. § 1406*.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2]   *28 U.S.C.S. § 1404*(a) provides: for the

1991 U.S. Dist. LEXIS 1432, *

convenience of the parties and the witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought. On a motion to transfer under § 1404(a), as a threshold issue, the court must determine if the action "might have been brought" in the transferee district. Only if jurisdiction is available in the transferee court can the court undertake an analysis that weighs the relevant factors of § 1404(a). In order to conclude that the transferee district is a viable forum, the court must be convinced that the transferee court would have subject matter jurisdiction, would have been proper as to venue and that defendants would have been amenable to service there.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
*Civil Procedure > Venue > General Venue*
*Civil Procedure > Pleading & Practice > Service of Process*
[HN3] *18 U.S.C.S. § 1965* governs venue and service of process for a civil Racketeer Influenced and Corrupt Organizations Act claim. Section 1965 provides in part: (a) any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs. (b) In any action under § 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof. (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

*Civil Procedure > Venue > Change of Venue Generally*
*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4] When a party moves to transfer an action, that party bears the burden of proof. Deference is due plaintiff's choice of forum. However, defendant's burden is less onerous when plaintiff brings suit in a court that is not considered plaintiff's "home turf" and the forum has no connection to the acts giving rise to the lawsuit. "Home turf" has been defined as the forum closest to plaintiff's home in which plaintiff could effect personal service over the principal defendant. Only if the "home turf" is selected by plaintiff or if the chosen forum has significant connection with the acts giving rise to the lawsuit may the court acknowledge the convenience to

plaintiff by giving deference to his choice of a forum.

COUNSEL: [*1]

Jack B. Blumenfeld, Esquire, and Matthew B. Lehr, Esquire, of MORRIS NICHOLS ARSHT & TUNNELL, Wilmington, Delaware. Roger J. Magnuson, Esquire, John B. Orenstein, Esquire, David R. Abrams, Esquire, and William A. Cole, Esquire, of DORSEY & WHITNEY, Minneapolis, Minnesota. Attorneys for Plaintiff.

Wayne J. Carey, Esquire, and Joseph Grey, Esquire, of PRICKETT JONES ELLIOTT KRISTOL & SCHNEE, Wilmington, Delaware. John W. Morrison, Esquire, of FLECK MATHER STRUTZ & MAYER, LTD., Bismarck, North Dakota. Attorneys for Defendants J.W. Beavers, Jr., Prosper Energy Corporation, Hunt Energy Corporation, Hunt Oil Company, Petro-Hunt Corporation and William Herbert Hunt.

Samuel A. Nolen, Esquire, and J. Michael Christopher, Esquire, of RICHARDS LAYTON & FINGER, Wilmington, Delaware. SERKLAND LUNDBERG ERICKSON MARCIL & McLEAN, LTD., Fargo, North Dakota. Attorneys for Defendants Marvin L. Kaiser and Russell L. Kiker, Jr.

JUDGES:

Joseph J. Farnan, United States District Judge.

OPINIONBY:

FARNAN

OPINION:

MEMORANDUM OPINION

William D. Walters, Sr. ("Walters") and Imperial Oil of North Dakota, Inc. ("Imperial Oil") commenced this civil action against eight Hunt family members or associations ("the Hunt defendants"), Marvin [*2] L. Kaiser ("Kaiser") and Russell L. Kiker ("Kiker") alleging, among other things, a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). n1 In addition to the RICO conspiracy charge, the complaint alleges fraud, breach of fiduciary duty, waste, breach of contract, and several other common law claims.

n1 The Hunt defendants are: William Herbert Hunt ("Hunt"), J. W. Beavers, Jr., as trustee of the

1991 U.S. Dist. LEXIS 1432, *

William Herbert Hunt Trust Estate ("Hunt Trust"), Hunt Oil Company ("Hunt Oil"), Prosper Energy Corporation ("Prosper"), Petro-Hunt Corporation ("Petro-Hunt"), and Hunt Energy Corporation ("Hunt Energy"). The last four defendants, when referred to collectively, will be referred to as "the Corporate defendants."

Originally, the complaint was filed in the United states District Court for the District of North Dakota on November 30, 1989. On December 14, 1989 that action was voluntarily dismissed by the plaintiffs and the complaint was filed in this Court on December 21, 1989.

On March 5, 1990 Hunt and [*3] the Hunt Trust filed a motion to dismiss while the Corporate defendants filed a motion to transfer the action. On March 12, 1990 Kaiser and Kiker filed a motion to dismiss, or, in the alternative a motion to transfer the action.

The motions to dismiss allege a lack of personal jurisdiction, insufficient process, lack of venue, lack of standing, failure to join an indispensable party and that this Court should abstain from hearing the case. The motions to transfer are argued both under *28 U.S.C. § 1404*(a), where the transferring Court must have venue before considering the motion, and, alternatively, under *28 U.S.C. § 1406* where transfer or dismissal is mandated if the transferring Court does not have venue.

Briefing is completed, oral argument was heard and the motion is ready for decision. The Court concludes that the action should be transferred under *28 U.S.C. § 1404*(a). n2

n2 The Court relies on *28 U.S.C. § 1404* (a) because even if the Court were to find venue to exist in the District of Delaware, the Court would be compelled, after weighing the interests, to transfer the case to North Dakota under *28 U.S.C. § 1404*. Therefore, the more lenient standard under section 1406, where transfer or dismissal is required when venue is improper, need not be considered.

[*4]

I. STATEMENT OF FACTS

A. The Parties

The Plaintiffs are Walters, a Montana citizen, who maintains a residence in North Dakota and Imperial Oil, a corporation incorporated in North Dakota and having its principal place of business in North Dakota. Walters

was a shareholder, officer, or director of Imperial Oil until November 14, 1988. Walters appears to have no ties with Delaware and Imperial Oil is not registered in Delaware as a foreign corporation for the purposes of transacting business.

The defendants are best described individually. Beavers is the trustee of the Hunt Trust, a trust that is organized under the laws of Texas. The trustee is a resident of Texas and has no contacts with Delaware. The trust, comprised primarily of oil and gas properties in North Dakota, has no interests in the State of Delaware. In 1986, the trust filed a Chapter 11 bankruptcy in Texas and a reorganization plan was approved in September, 1988.

Hunt is a resident of Texas and serves as an officer and director of certain Delaware corporations. Hunt owns real property and mineral rights in North Dakota. As the trust did, Hunt filed a Chapter 11 bankruptcy petition in Texas and the plan was [*5] approved in December 1989.

Hunt Oil is a Delaware Corporation with a bank account in Delaware. From 1961 to 1976 Hunt Oil operated the "Unit" in North Dakota that is the subject of this litigation. In 1976 when operation of the "Unit" was transferred to Prosper, Hunt Oil ceased to have any further connection with the "Unit".

Prosper was a Delaware Corporation that filed a certificate of dissolution on December 30, 1988. Prosper, in addition to the property and mineral interests located in North Dakota, also maintained offices in North Dakota and was licensed to conduct business there.

Hunt Energy and Petro-Hunt are Delaware corporations. Petro-Hunt conducts business and maintains offices in North Dakota. Hunt Energy and Petro-Hunt, like the other Corporate defendants that are incorporated in Delaware, maintains a registered office in Delaware for the service of process.

Kaiser is a citizen and resident of North Dakota. In addition to his residence, Kaiser owns or has an interest in numerous commercial properties and mineral rights in North Dakota.

Kiker is a citizen and resident of North Dakota. Kiker also maintains ownership or leasehold interests in natural resources which are located [*6] in North Dakota. Both Kaiser and Kiker allegedly have no contacts with Delaware.

B. The Dispute

Allegedly an ongoing scheme began in the 1950's between Hunt and his associates that involved the

1991 U.S. Dist. LEXIS 1432, *

unitization of an oil producing region in North Dakota known as the North Tioga Madison Field (the "Unit").

The Hunt defendants allegedly purchased certain leases and began exploring for oil in the Williston Basin of North Dakota known as Section 36 ("Section 36"). In 1957, after their drilling efforts proved unsuccessful, Hunt allegedly abandoned the lease. At this time, Walters, a plaintiff in this litigation and Robert E. Hanson purchased the leases. Their drilling efforts on Section 36 proved successful and allegedly the Hunt defendants then embarked on a scheme to deprive Walters, Hanson, and later Imperial Oil of their rights concerning Section 36.

As a first effort to regain control of Section 36, the Hunt defendants allegedly attempted to compel Walters and Hanson to join the Unit, thereby including Section 36 in the Unit. The Unit was to be operated by Hunt Oil following approval by the State Industrial Commission. The plaintiffs allege that the approval Hunt and Hunt Oil received [*7] for operating this Unit was obtained through fraudulent misrepresentations. Plaintiffs further allege that coercion by Hunt, Hunt's associates and others led Walters and Hanson to surrender their individual interest in Section 36 and join the Unit thus, making the unitization possible. Defendants deny these allegations and assert that the North Dakota Industrial Commission had approved unitization prior to Walters' consent.

During the time the Hunt defendants ran the Unit, plaintiffs allege they ruined the wells through excessive withdrawal and operated the wells to their benefit without consideration for the interests of the leaseholders. Plaintiffs also allege the Hunt defendants used poor production procedures which eventually required redrilling.

In 1985, the Unit was dissolved and Walters again gained operating control of Section 36. Plaintiffs claim the dissolution resulted from the Industrial Commission finding the Unit was being mismanaged, while defendants claim the termination was voluntary.

Following Walters regaining control of Section 36, the complaint alleges that the Hunt defendants conspired to defraud and extort deep drilling rights to Section 36. As the plaintiffs [*8] state it, the Hunt defendants knew that Section 36 had acquired new value because surrounding properties were discovering new oil reservoirs but failed to disclose this to the plaintiffs in an attempt to obtain deep drilling rights in July, 1987. The Hunt defendants efforts, allegedly, included threatening Imperial Oil with the loss of its lease, blocking access to saltwater disposal, and withholding funds from Imperial Oil, allege the plaintiffs.

In the final phase of the alleged scheme, which occurred sometime in 1987, the plaintiffs claim that the Hunt defendants were able to get Kaiser and Kiker to join the conspiracy. Allegedly Kaiser and Kiker fraudulently obtained an oil and gas lease that was previously owned by some of the Hunt defendants under a lease covering minerals in Dunn County, North Dakota (the "Glovatsky minerals"). Kiker allegedly purchased the Glovatsky minerals in 1976 and then leased these rights to a company which Kaiser wholly owned.

In order to settle ownership of the Glovatsky minerals a lawsuit was brought in a state court in North Dakota. In an attempt to gain control of the mineral rights, Kaiser and Kiker allegedly committed perjury during the proceedings. [*9] It should be noted that the North Dakota state court ruled in favor of Kaiser and Kiker and the Supreme Court of North Dakota affirmed.

Walters claims that the Hunt Trust, by filing a civil action in a North Dakota state court against several defendants (including Kaiser, Kiker and Walters), attempted to implicate him in the criminal activity of Kaiser and Kiker. The Hunt Trust lawsuit which is pending in North Dakota should ultimately decide the rights to the Glovatsky minerals and whether Walters was a part of a scheme to commit perjury in the earlier trial. Walters alleges that through the lawsuit the Hunt Trust is actually attempting to obtain deep oil rights from Imperial Oil and extract unfair concessions regarding other oil properties from Walters. Kaiser and Kiker settled with the Hunt Trust.

Finally, Walters alleges that Kaiser and Kiker have harassed and slandered Walters to acquire the Section 36 leases. Their acts allegedly include their corroboration with the Hunts in the perjury lawsuit, the use of terror tactics (beating on the doors and window of Walters' home) and making threatening phone calls. All of these acts allegedly are for the purpose of acquiring the Section [*10] 36 leases.

All of the oil leases and mineral rights relate to property located in North Dakota. Further, most all of the alleged acts of coercion, harassment and/or slander occurred in North Dakota. There appears to be no connection to Delaware, with the exception of incorporation of some of the corporate defendants. The defendants, through the instant motion, request that either the suit be dismissed, or, in the alternative, the action be transferred to the United States District Court for the district of North Dakota.

II. DISCUSSION

As stated earlier, the Court concludes this action

1991 U.S. Dist. LEXIS 1432, *

should be transferred pursuant to *28 U.S.C. § 1404*. For purposes of this decision, the Court has assumed that venue is proper in this District. This is because [HN1] the requirements of § 1404 are more stringent than those under *28 U.S.C. § 1406*.

[HN2] Section 1404 (a) provides:

For the convenience of the parties and the witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As a threshold issue the Court must determine if the action "might have been brought" in the transferee district (i.e. North Dakota). [*11] Only if jurisdiction is available in the transferee court can the Court undertake an analysis that weighs the relevant factors of section 1404(a).

Defendants claim that this action could have been brought in the United State District Court for the District of North Dakota. n3 In order to conclude that North Dakota is a viable forum the Court must be convinced the transferee court would have subject matter jurisdiction, would have been proper as to venue and that the defendants would have been amenable to service there. *American Standard, Inc. v. Bendix Corp., 487 F. Supp. 254 (D.C. Mo. 1980); American Tel. & Tel. Co. v. Milgo Electronic Corp., 428 F. Supp. 50 (D.C.N.Y. 1977).*

> n3 Although the defendants claim that because the plaintiffs initially filed suit in North Dakota the first prong of section 1404(a) is satisfied, the Court finds that to be an insufficient basis for concluding the first prong is satisfied. Therefore, the Court will initially determine if the United States District Court for the District of North Dakota would have been a proper forum.

[*12]

All of these issues may be addressed by reference to [HN3] *18 U.S.C. § 1965* which governs venue and service of process for a civil RICO claim. The applicable provisions of section 1965 are:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is

shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

. . .

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

Clearly, under *18 U.S.C. § 1965*(a) the District Court in North Dakota would have subject matter jurisdiction and venue over all of the defendants. As well, section 1965(a) provides [*13] a means to serve all the defendants. The Court concludes the defendants could have been subject to suit in North Dakota under section 1965(a). Each of these defendants either resides in, is found in or transacts affairs within North Dakota and therefore, pursuant to section 1965 (a) jurisdiction and venue would have been appropriate there. n4

> n4 Although same of the defendants claim their contact with North Dakota does not bring them under the authority of section 1965 (a), the Court concludes if any doubt exists, justice would require those defendants to be brought into Court pursuant to section 1965 (b). Only by having all defendants present will it be possible to completely resolve the controversy. Further, if Kaiser and Kiker are not said to be part of the overall conspiracy, jurisdiction may still be obtained over them in North Dakota due to their residences and substantial contacts.

As a result, the Court concludes the first prong for transfer under *28 U.S.C. § 1404* has been satisfied and it is necessary to now [*14] turn to the weighing of interests. [HN4] When a party moves to transfer an action, that party bears the burden of proof. *Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973).* Deference is due the plaintiff's choice of forum. *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970),* cert. denied, *401 U.S. 910 (1971).* However, the defendant's burden is less onerous when the plaintiff brings suit in a court that is not considered the plaintiff's "home turf" and the forum has no connection to the acts giving rise to the lawsuit. *Kirschner Bros. Oil, Inc. v. Pannill, 697 F. Supp. 804, 806 (D. Del. 1988).* "Home turf" has been defined as "the forum closest to the [plaintiff's] home in which [plaintiff] could effect personal service over the

1991 U.S. Dist. LEXIS 1432, *

principal defendant." Id. (quoting, Mayer v. Development Corp. of America, 396 G. Supp. 917, 929 n.26 (D. Del. 1975)). Only if the "home turf" is selected by the plaintiff or if the chosen forum has significant connection with the acts giving rise to the lawsuit may the Court acknowledge the convenience to the plaintiff by giving deference to his choice of a forum. Id. (citations omitted).

The Court concludes that the "home [*15] turf" of plaintiffs in this case would most likely be North Dakota. Plaintiff, Imperial Oil, is incorporated and has its principal place of business in North Dakota. While Walters is a citizen of Montana, he maintains a residence in North Dakota. As defined, the "home turf" would be that place closest to the plaintiff's home where suit can be brought. Under this definition, it appears that North Dakota is the most viable selection as the "home turf" of the plaintiffs.

In any event, it is clear that Delaware is not the plaintiffs' "home turf," and therefore, only if acts occurring within Delaware are central to the controversy should deference be given to the plaintiffs' choice of forum. However, not only were there no acts central to the controversy that occurred in Delaware, very few acts by any party have ever occurred in Delaware.

Thus, the Court concludes under either analysis North Dakota is plaintiffs' "home turf" and the defendants' burden is less compelling.

A. Convenience To The Parties

The convenience of Delaware to any party is difficult, if not impossible, to ascertain. Whereas, the convenience to all the defendants, and arguably to the plaintiffs, in having this [*16] controversy heard in North Dakota is readily apparent. It should be noted, the plaintiffs made no argument why Delaware would be a more convenient forum and the Court is convinced no such argument could be made.

Most of the litigants are located in North Dakota. All of the defendants, and for that matter plaintiffs, have strong ties to North Dakota. Likewise, most, if not all, of the documentary evidence needed for litigation is located in North Dakota.

On the other hand, Delaware is interested in this litigation and has contacts with the parties insofar as several of the corporate defendants chose to incorporate here. Although these are important contacts, in this litigation they do not bear sufficient weight on the convenience of the parties to try their case here.

On these facts, the Court concludes the convenience to the parties weighs in favor of transferring this action to North Dakota.

B. Convenience To The Witnesses

Although the Court is not aware to what extent witnesses will be called in this litigation, it is obvious the issues are local in nature. It appears from the pleadings, motions and briefs that most witnesses would be located either in North Dakota or very [*17] close to that jurisdiction. As a result, many witnesses would have to travel across the country to testify if this case were tried in Delaware, and there is no indication that Delaware would be a more convenient forum for any witness who might be called. Therefore, by transferring this case to North Dakota many would benefit and no one would be inconvenienced. For these reasons, the convenience of non-party witnesses would also weigh in favor of transferring the case to North Dakota.

C. Interests Of Justice

The crux of the plaintiffs' argument in opposition to transferring this action rests here. They assert that they would be unable to receive a fair trial in North Dakota because of the popularity of some of the people who will necessarily be implicated by this litigation. This argument however, fails to acknowledge the integrity of the federal judicial system. While the Court understands the concerns presented by the plaintiffs, there is no compelling reason to think they will be unable to receive a fair trial in a United States District Court in North Dakota.

Further, all other factors to be considered when determining what the interests of justice require, weigh in favor [*18] of transferring this case. For instance, judicial economy will be served if this litigation is conducted in North Dakota. All documents, witnesses and discovery can be found in or near North Dakota. By conducting the case in North Dakota there will be a savings of time and money and duplication of evidence and effort may be avoided. Finally, North Dakota law will govern many of the issues raised in the controversy, and logic teaches that a Federal Court sitting in North Dakota will be better versed in North Dakota's statutory and common law than would the District Court of Delaware.

III. CONCLUSION

For all the reasons discussed, the Court concludes this case should be transferred to the United State District Court for the District of North Dakota. No decision is made with regard to the pending motions to dismiss.

An appropriate Order will be entered.

## CERTIFICATE OF SERVICE

I, Glenn C. Mandalas, hereby certify that on May 23, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market  Street
> Wilmington, DE  19801

I further certify that I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

> Gary A. Rosen, Esquire
> Patrick Madamba, Jr.
> Law Offices of Gary A. Rosen, P.C.
> 1831 Chestnut Street, Suite 802
> Philadelphia, PA  19103

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> Josy W. Ingersoll  (No. 1088)
> John W. Shaw (No. 3362)
> Glenn C. Mandalas (No. 4432)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> gmandalas@ycst.com

> *Attorneys for Defendants*